**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TAEWOO KIM, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br>　v.<br><br>JUMP TRADING, LLC, and KANAV KARIYA,<br><br>　　　　　Defendants. | No. 1:23-cv-02921<br><br>Judge Nancy L. Maldonado |

**DEFENDANTS' OPPOSED MOTION TO TRANSFER VENUE
TO THE NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................... 1

**RELEVANT BACKGROUND** ................................................................................................... 2

    I.    The Terra Ecosystem and the Parties. ................................................................................ 2

    II.   The Allegations in This Case and the Year-Long Pending Litigation in *Patterson*. ........... 2

**ARGUMENT** ................................................................................................................................ 4

    I.    Jurisdiction and Venue Exist in the Northern District of California. ................................. 4

    II.   Transfer Comports with the Interest of Justice. .................................................................. 5

        a.    Transfer is Appropriate Where There is Related Litigation. ............................................ 5

        b.    Transfer Would Comport with the Other Interests of Justice. ......................................... 8

    III.  The Convenience Factors Support Transfer. .................................................................... 11

    IV.  Judge Rakoff's Denial of Transfer Is Not Applicable Here. ............................................. 14

**CONCLUSION** ........................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albright v. Terraform Labs, Pte. Ltd.*,
   2022 WL 16985806 (S.D.N.Y. Nov. 15, 2022) .................................................................. 14, 15

*Aliano v. Quaker Oats Co.*,
   2017 WL 56638 (N.D. Ill. Jan. 4, 2017) ................................................................................ Passim

*Braddock v. Jolie*,
   2012 WL 2282219 (N.D. Ill. June 15, 2012) ........................................................................ 13

*Coffey v. Van Dorn Iron Works*,
   796 F.2d 217 (7th Cir. 1986) ................................................................................................. 5

*De Falco v. Vibram USA, Inc.*,
   2013 WL 1122825 (N.D. Ill. Mar. 18, 2013) ..................................................................... Passim

*Eugene v. McDonald's Corp.*,
   1996 WL 411444 (N.D. Ill. July 18, 1996) ........................................................................... 13

*George & Co. LLC v. Target Corp.*,
   2021 WL 2948910 (N.D. Ill. July 14, 2021) ...................................................................... Passim

*Hecker v. Petco Animal Supplies, Inc.*,
   2017 WL 2461546 (N.D. Ill. June 7, 2017) ........................................................................ Passim

*Indian Hills Holdings, LLC v. Frye*,
   572 F. Supp. 3d 872 (S.D. Cal. 2021) ................................................................................. 10

*Jaramillo v. DineEquity, Inc.*,
   664 F. Supp. 2d 908 (N.D. Ill. 2009) .................................................................................. Passim

*Management Registry, Inc. v. Batinich*,
   2018 WL 1586244 (N.D. Ill. Apr. 2, 2018) .......................................................................... 12

*Native American Arts, Inc. v. Milne Jewelry Co.*,
   2006 WL 8461635 (N.D. Ill. June 16, 2006) ......................................................................... 9

*Perry v. Cable News Network, Inc.*,
   2014 WL 4214873 (N.D. Ill. Aug. 25, 2014) ......................................................................... 8

*Tavistock Restaurant Group, LLC v. Zurich American Insurance Co.*,
   2021 WL 1614519 (N.D. Ill. Apr. 26, 2021) ............................................................... 7, 12, 14

*Teed v. Chen*,
  2022 WL 16839496 (N.D. Cal. Nov. 9, 2022) ............................................................................... 9

*Thorogood v. Sears, Roebuck & Co.*,
  2006 WL 3302640 (N.D. Ill. Nov. 9, 2006) ............................................................................... 10

**Statutes**

7 U.S.C. § 25(c) ............................................................................................................................... 4

15 U.S.C. § 78u-4 ........................................................................................................................... 3

28 U.S.C. § 1404(a) ........................................................................................................................ 4

**PRELIMINARY STATEMENT**

This lawsuit is yet another putative nationwide class action based on the collapse of the Terra cryptocurrency ecosystem in 2022. But this case is not the first—or even second or third—to be filed on these facts. Rather, multiple lead plaintiffs have been litigating these exact same events for nearly a year in the Northern District of California in *Patterson v. Terraform Labs, Pte. Ltd.*, No. 3:22-cv-03600 (N.D. Cal. filed June 17, 2022). That ongoing, first-filed litigation has already resulted in 124 docket entries and 32 separate Orders, including the hotly contested selection of Lead Plaintiff and Lead Counsel, three complaints, and active briefing on motions to dismiss and to compel arbitration. *See* Ex. A (*Patterson* Docket).

The present action is a belated attempt at forum shopping—apparently to circumvent the Lead Plaintiff and Counsel selection in the long-running *Patterson* action—filed in federal court in Illinois by a New Jersey plaintiff, represented by California and New York firms. Neither this plaintiff nor the law firms here even moved to be selected as Lead Plaintiff or Counsel in *Patterson*. Instead, they filed this action five months *after* the selection of Lead Plaintiff and Counsel in *Patterson*, but under controlling law in this District, this case should be transferred to the Northern District of California for consolidation or coordination with *Patterson*.

Allowing this action to proceed separately contravenes considerations of both convenience and the interest of justice and would be an inefficient use of the judiciary's and parties' resources, requiring duplicative discovery, testimony, and briefing, and risking inconsistent decisions on the same facts. This action is likely to move faster in the Northern District of California, which has a year head start. Moreover, there is no legally compelling connection to Illinois, and nearly all of the relevant witnesses and documents either are located outside Illinois or are just as easily accessed elsewhere. Given the existence of *Patterson*, this federal question case brought by a

nonresident Plaintiff on behalf of a purported nationwide class should be transferred to California for the convenience of parties and witnesses and in the interest of justice.

## RELEVANT BACKGROUND

### I. The Terra Ecosystem and the Parties.

The Terra ecosystem and its "stablecoin" UST were developed by Terraform Labs ("TFL"), a Singaporean open-source software development firm headed by Do Kwon. A cryptocurrency ecosystem is a blockchain on which various digital assets or tokens can operate. Compl. ¶ 36. As an algorithmic stablecoin, UST was designed to maintain a $1 value. *Id.* ¶ 38. In May 2021, the value of UST briefly "depegged" from $1 before regaining its value. *Id.* ¶ 4. In May 2022, the value of UST depegged from $1 again and did not recover. *Id.* ¶ 73.

Jump Crypto, the cryptocurrency arm of the Jump Trading Group, was an early user of the ecosystem. *See id.* ¶ 41. Plaintiff Taewoo Kim is a New Jersey resident asserting Commodities Exchange Act ("CEA") and unjust enrichment claims on behalf of a putative nationwide class against Jump Trading and Mr. Kariya, the president of Jump Crypto. *Id.* ¶¶ 1, 10, 12.

### II. The Allegations in This Case and the Year-Long Pending Litigation in *Patterson*.

The present action was filed in May 2023. But nearly a full year earlier, on June 17, 2022, Plaintiff Nick Patterson filed a class action complaint in the Northern District of California based on the same exact facts that are at issue here. *See* Ex. A. *Patterson* asserts federal securities fraud, racketeering, and state law claims on behalf of a purported class of persons who purchased digital assets within the Terra ecosystem from March 17, 2021, to May 25, 2022, *see* Ex. B ¶ 1 (*Patterson* Second Am. Compl.), i.e., effectively subsuming the proposed class here (May 23, 2021 to May 31, 2022).[1] Compl. ¶ 1.

---

[1] *Patterson* asserts claims against TFL, Do Kwon, Nicholas Platias, Jump Trading, Tribe Capital, Definance Capital/Definance Technologies Oy, and Three Arrows Capital Pte. Ltd.

Federal law imposes swift, competitive deadlines for selection of lead plaintiff and counsel in federal securities class actions. 15 U.S.C. § 78u-4. Judge Trina Thompson in the Northern District of California carefully considered a dozen-plus briefs to select the most capable plaintiff and counsel to prosecute the pending claims involving the collapse of the Terra ecosystem, including those asserted against Jump Trading. *See* Ex. A. On December 13, 2022, Judge Thompson selected the Lead Plaintiff and Lead Counsel and set associated pleading and motion deadlines. *Id*. Pursuant to multiple Orders by Judge Thompson, Lead Counsel has also filed two amended complaints. *Id*. The *Patterson* Defendants, including Jump Trading, have already filed motions to dismiss the complaint and to compel arbitration. *Id*.

Although notice of the selection of lead plaintiff and counsel deadlines in *Patterson* was publicized, neither Plaintiff Kim nor his counsel requested appointment there. Instead, five months after Judge Thompson appointed a Lead Plaintiff and Lead Counsel, on May 9, 2023, they filed this action in Illinois seeking to represent a sizeable subset of the *Patterson* class.

The factual allegations in this case substantially duplicate those in *Patterson*. Both plaintiffs allege injury due to the collapse of the Terra ecosystem in May 2022. Compl. ¶¶ 1–7; Ex. B ¶¶ 5–7, 10. Both plaintiffs claim that defendants promoted UST and the ecosystem as stable when they knew it was not. *See, e.g.*, Compl. ¶¶ 114–15; Ex. B ¶ 250. Both plaintiffs describe Jump Trading's involvement nearly identically, alleging, for example, that during the May 2021 depeg, Jump Trading and TFL "secretly agreed" that Jump Trading would help reestablish UST's peg. Compl. ¶¶ 4, 56, 70; Ex. B ¶¶ 187, 192, 197, 202, 269. The alleged misstatements here are also at issue in *Patterson*. Compl. ¶¶ 61, 65, 69; Ex. B ¶¶ 129, 131, 144. In short, Plaintiff's Complaint covers precisely the same factual allegations at issue in *Patterson* and seeks to represent a significant portion of *Patterson*'s nationwide class. Compl. ¶ 1; Ex. B ¶ 1.

## **ARGUMENT**

Section "1404(a) was designed to prevent the situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts." *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 915–16 (N.D. Ill. 2009); *see De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *10 (N.D. Ill. Mar. 18, 2013). If allowed to proceed simultaneously in both districts (assuming, for the purposes of this motion, that arbitration is not compelled), this case will require substantial duplication of efforts and needlessly waste resources of the judiciary, Defendants, and witnesses. That, combined with minimal legally significant connections with this District, strongly supports transfer of this case to the Northern District of California.

Under Section 1404(a), the Court has the discretion to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Transfer is appropriate where, as here, the transferee district has proper jurisdiction and venue, would be more convenient for the parties and witnesses, and serves the interest of justice. *De Falco*, 2013 WL 1122825, at *9. The Court's analysis is "flexible and individualized, and looks beyond a narrow or rigid set of considerations," as the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *George & Co. LLC v. Target Corp.*, 2021 WL 2948910, at *1 (N.D. Ill. July 14, 2021) (internal quotation marks and citations omitted). As explained below, all of these discretionary factors weigh in favor of transfer.

**I.     Jurisdiction and Venue Exist in the Northern District of California.**

There is no dispute that jurisdiction exists in the Northern District of California; Jump Trading and Mr. Kariya do not contest personal jurisdiction in California for the purposes of this case. Venue is similarly proper in the Northern District of California pursuant to 7 U.S.C. § 25(c)

4

as a judicial district wherein any act or transaction constituting the alleged violation occurred.[2] Accordingly, the only relevant considerations here are whether the interest of justice and convenience favor a transfer of the present case to the Northern District of California, where *Patterson* has been proceeding for almost a year.

## II. Transfer Comports with the Interest of Justice.

Transfer serves the interest of justice here because (1) there is a long-pending case in the Northern District of California arising from precisely the same events; (2) that California action will likely proceed to resolution faster than this case; and (3) despite Defendants' presence here, this federal question case lacks a compelling connection to this forum or its laws. *See De Falco*, 2013 WL 1122825, at *10 (holding interest of justice factor determinative where there was a substantially similar pending case); *Jaramillo*, 664 F. Supp. 2d at 915–17 (evaluating interest of justice includes "such factors as trying related litigation together, ensuring a speedy trial, [] having the trial before a judge who is familiar with the applicable law" and "the relation of the community to the occurrence"). These factors all support transfer to the Northern District of California.

### a. Transfer is Appropriate Where There is Related Litigation.

Where, as here, the subject matter of two cases substantially overlaps, parallel proceedings are an inefficient use of resources and risk conflicting rulings. That is exactly what Section 1404(a) was designed to prevent. *See Jaramillo*, 664 F. Supp. 2d at 915–16; *see also Aliano v. Quaker Oats Co.*, 2017 WL 56638, at *3 (N.D. Ill. Jan. 4, 2017); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) ("related litigation should be transferred to a forum where consolidation is feasible").

---

[2] Plaintiff has argued that Defendants' motion to compel arbitration in *Patterson* concedes that venue is improper in California. Opp'n to Extension Mot. 3–4, ECF No. 14. But Defendants' motion to compel arbitration does not invalidate venue in California any more than it invalidates venue here. Rather, it reflects a contractual obligation of plaintiffs in both cases to not litigate these disputes in *any* court.

5

The subject matter of this case and *Patterson* more than substantially overlap—they are virtually identical. Both cases are based on the alleged lack of stability and eventual collapse of UST and the Terra ecosystem. Compl. ¶¶ 1–7; Ex. B ¶¶ 5–10. Both claim that during the May 2021 depeg, Jump Trading "secretly" agreed with TFL to purchase UST to help reestablish its $1 peg. Compl. ¶¶ 4, 7, 56, 70; Ex. B ¶¶ 192, 197, 202. And Defendants' alleged misstatements here are also at issue in *Patterson*. See Compl. ¶¶ 61, 65, 69; Ex. B ¶¶ 129, 131, 144. Determination of both cases will accordingly require analysis of the same actions and statements.

It is true that, in an apparent attempt to circumvent the Lead Plaintiff and Lead Counsel selection in *Patterson*, the out-of-state plaintiff and lawyers here assert a different legal theory (federal commodities, rather than securities, claims) for the exact same underlying facts. But it is the underlying facts, not the alleged legal theories, that are dispositive on a motion to transfer. Courts in this District "consider the substance of a claim over the form when determining that a claim is duplicative." *Jaramillo*, 664 F. Supp. 2d at 916 (transferring violations of Illinois consumer fraud statutes and contract claims to district with related federal racketeering case because they were "based on the same underlying facts," including whether Defendants made misrepresentations). Accordingly, courts in this District routinely transfer cases to districts where related cases are pending under different legal theories, as "[w]hile the claims are based on different underlying law, they are substantially similar because they have the same underlying facts." *See, e.g.*, *De Falco*, 2013 WL 1122825, at *11 (transferring Illinois consumer fraud and breach of warranty claims to a district with a case alleging violations of Massachusetts and Florida consumer fraud statutes, where "the underlying issue [was] whether Defendants misrepresented the health benefits" of their product); *Hecker v. Petco Animal Supplies, Inc.*, 2017 WL 2461546, at *6 (N.D. Ill. June 7, 2017) (transferring Illinois minimum wage and Illinois Wage Payment and

Collection Act claims to district hearing related Fair Labor Standards Act case "because each case involves the same core issue" of whether plaintiff was exempt from overtime).

The rationale for such a transfer is straightforward. Regardless of the competing legal theories alleged, allowing factually overlapping cases in two different districts to go forward simultaneously is an inefficient use of the limited resources of the judiciary and risks inconsistent rulings on the legal significance of the same facts. As many courts in this District have held, "allowing the cases to proceed in separate districts could lead to duplication of discovery, inconsistent pretrial rulings, and an inefficient use of the parties' and judiciary's resources," which "weighs in favor of transfer to the venue where the first nearly identical case was filed." *See, e.g.*, *Aliano*, 2017 WL 56638, at *3 (internal quotation marks omitted); *De Falco*, 2013 WL 1122825, at *11; *Tavistock Rest. Grp., LLC v. Zurich Am. Ins. Co.*, 2021 WL 1614519, at *9 (N.D. Ill. Apr. 26, 2021); *Jaramillo*, 664 F. Supp. 2d at 916; *Hecker*, 2017 WL 2461546, at *6. "[A]llow[ing] these parallel cases to proceed in two different district courts would undermine the public's interest in judicial economy." *De Falco*, 2013 WL 1122825, at *11.

The need to avoid inconsistent rulings and duplication of efforts is especially compelling in cases like this one, which involves the application of various legal theories to relatively novel technology. Plaintiff's own assertion that certain commodities and securities claims are incompatible illustrates precisely the risk of the same token being found a commodity in Chicago and a security in San Francisco. Likewise, the two courts could have conflicting factual findings on whether the alleged actions and statements were misleading. Further, Defendants intend to move to compel arbitration here, as the *Patterson* defendants did, due to Plaintiff's apparent use of the Anchor Protocol, a "high yield savings account" on the Terra blockchain with an arbitration provision in its Terms of Service. Whether claims connected to use of the Anchor Protocol must

7

be arbitrated should also be determined by a single court; separate determinations risk conflicting decisions. Moreover, the functionality of an algorithmic stablecoin is at the center of these disputes—two courts familiarizing themselves with the esoteric intricacies of the Terra ecosystem and associated tokens would be markedly inefficient. *See id.* at *10 (stating it would be "wasteful and duplicative to have two different courts familiarize themselves with the [same] controversy").

In addition, Plaintiff and his counsel cannot avoid transfer through artful pleading. The proposed class here is a subset of the proposed class in *Patterson*; indeed, Plaintiff himself is a part of the proposed *Patterson* class.[3] *See id.* (transfer appropriate where putative class was a subset of the class in the Massachusetts action); *Hecker*, 2017 WL 2461546, at *6 (transfer warranted where Plaintiff was member of proposed class in similar action). While Mr. Kariya is not a defendant in *Patterson*, his statements at issue here are also at issue there. *See supra* at 3. And the conspicuous absence here of TFL, Do Kwon, Nicholas Platias, and the other defendants from *Patterson* is irrelevant given the virtually identical facts. *See Perry v. Cable News Network, Inc.*, 2014 WL 4214873, at *4 (N.D. Ill. Aug. 25, 2014) (transfer appropriate where cases involved "different classes and different defendants" but similar factual questions and technology). Thus, as this action "substantially overlaps with the parties, issues, and relief requested in an earlier-filed class action in another district, transfer comports with the efficient administration of justice." *Hecker*, 2017 WL 2461546, at *5.

### b. Transfer Would Comport with the Other Interests of Justice.

The remaining interest of justice factors likewise strongly support transfer, as this case should proceed substantially faster in the Northern District of California and there are only minimal relevant connections with the Northern District of Illinois.

---

[3] Moreover, even in situations in which the class composition differs "considerably," there is "unfairness in requiring Defendants to litigate a class action raising similar issues." *Hecker*, 2017 WL 2461546, at *5.

**Speed at which the case will proceed to trial.** This case will proceed faster if coordinated or consolidated with *Patterson*. Transfer to a court hearing a related case is particularly appropriate where the related case is "substantially further along." *See Jaramillo*, 664 F. Supp. 2d at 916–17 (transferring action to Kansas where a related action had been pending for two months longer); *Hecker*, 2017 WL 2461546, at *6 (transferring to venue with related case that had "progressed significantly, while [the case] here is in its infancy"). Further, this case will likely proceed faster in the Northern District of California given the relative speed in each district, and that *Patterson* was filed nearly a full year ago. The median time from filing to trial in this District (53.5 months) is over a year longer than in the Northern District of California (37.1 months). United States District Courts, *National Judicial Caseload Profile*, 47, 66, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331. 2023.pdf (last visited June 9, 2023).[4] The relative speed of the case in each district—particularly as *Patterson* has been proceeding for almost a year—thus favors transfer to the Northern District of California.

**Familiarity with the applicable law.** As this case is primarily based on federal law, the Northern District of California is considered equally familiar with the law at issue, regardless of the relative number of CEA cases in each district.[5] *See Native Am. Arts, Inc. v. Milne Jewelry Co.*, 2006 WL 8461635, at *5 (N.D. Ill. June 16, 2006) ("federal courts are equally competent to decide issues of federal law regardless of whether the precise issue has arisen in that district"). Plaintiff's single claim for unjust enrichment under Illinois law does not alter this calculus. First, his unjust enrichment claim is at most an alternative claim, as equitable remedies are "available only when

---

[4] While Plaintiff focuses on time to disposition, courts consider both the time to disposition and the time to trial in their analysis. *See George*, 2021 WL 2948910, at *5. The difference in time to disposition between the two districts (less than a month) is negligible, but the over a year difference in speed to trial is significant, particularly combined with *Patterson*'s year head start.
[5] In any event, the Northern District of California has adjudicated CEA-related disputes. *See, e.g.*, *Teed v. Chen*, 2022 WL 16839496, at *1 (N.D. Cal. Nov. 9, 2022).

9

there is no adequate remedy at law," and thus the federal claims likely preclude his state law claim in any event. *See Thorogood v. Sears, Roebuck & Co.*, 2006 WL 3302640, at *5 (N.D. Ill. Nov. 9, 2006). Second, *Patterson* likewise asserts a claim for unjust enrichment, *see* Ex. B ¶¶ 349–52, and, as there is no material difference between California and Illinois unjust enrichment,[6] the Northern District of California will be familiar with the law. *See De Falco*, 2013 WL 1122825, at *11 (transferring case where state law claims were similar to the state law claims in the case pending in the transferee jurisdiction). Thus, the Northern District of California is equally conversant as this Court in the applicable law in this case.

**Desirability of resolving controversies in, and relation of the occurrence at issue to, this community.** While Mr. Kariya and Jump Trading (which, while it is a named defendant, has no connection to the underlying dispute, *see* Ex. C ¶ 1 (Decl. of Matthew Hinerfeld)) are located in Chicago, the allegations in this case are nationwide, if not worldwide, eliminating any particular community interest in this dispute. The proposed class is nationwide, and the Terra ecosystem was developed by TFL (a Singaporean entity). And although some actions may have occurred in Chicago, much of the Jump Trading Group's cryptocurrency trading is conducted by Jump entities[7] and employees based outside of the United States. *Id.* ¶¶ 1–2. The purported statements alleged in the Complaint were accessible around the world (not just in Illinois)—as demonstrated by Plaintiff's purported injury in New Jersey, where he lives.

Given the geographic scope of the alleged conduct, the Northern District of Illinois does not have a strong community interest in adjudicating this matter. *See Aliano*, 2017 WL 56638, at

---

[6] *Compare Thorogood*, 2006 WL 3302640, at *5 (Illinois unjust enrichment requires that "defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience"), *with Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 888–89 (S.D. Cal. 2021) (California unjust enrichment prohibits "receipt of a benefit" and "unjust retention of the benefit at the expense of another").

[7] In fact, as a factual matter, Jump Trading was not involved in any of the alleged conduct at issue here.

10

\*3 (finding no "compelling community interest" in any venue due to nationwide marketing). Likewise, where, as here, "the putative class is national in scope, there is no compelling community interest that would be preserved by the selection of one venue over another." *Jaramillo*, 664 F. Supp. 2d at 917. Indeed, the Northern District of California "has a stronger connection to the claims since [a] case[] involving similar claims [is] currently pending there." *See George*, 2021 WL 2948910, at \*5. The interest of justice thus supports transfer.

### III. The Convenience Factors Support Transfer.

Considerations of convenience, particularly those of potential third-party witnesses, weigh in favor of transfer to the Northern District of California. Where, as here, transfer would be to consolidate or coordinate with another case, "the proper inquiry is not whether Illinois is more convenient than California in the abstract but instead whether sanctioning a second, nearly identical action here is more convenient than transferring the case for the purpose of consolidation." *Aliano*, 2017 WL 56638, at \*3 (staying the case where the existence of a prior proceeding case in California supported transfer but personal jurisdiction was not proper in California) (internal quotation marks omitted). "[C]onvenience should not be assessed in a vacuum." *Id.* at \*3 (internal quotation marks omitted). In evaluating convenience, "courts consider, among other factors, (1) the availability of and access to witnesses, (2) each party's access to and distance from resources in each forum, (3) the location of material events, and (4) the relative ease of access to sources of proof." *Id.* at \*2.

As in *Aliano*, "[w]hen considered in that light, convenience weighs in favor of transfer." *Id.* at \*3. This District is not convenient for Plaintiff, who does not live here, nor Defendants, as Jump Trading must already litigate these same events in California. As the purported representative of a national class, Plaintiff's choice of forum does not outweigh those

11

considerations, and given the global nature of the events and electronic nature of the documents, the relevant proof is not tied to this District.

**Convenience of the witnesses.** It would be a significant imposition on witnesses, particularly third-party witnesses, to be deposed and testify about the same set of facts in both the Northern District of California and this District.[8] *See Mgmt. Registry, Inc. v. Batinich*, 2018 WL 1586244, at *5 (N.D. Ill. Apr. 2, 2018) (transferring case where it was "virtually guaranteed" that "the role of significant witnesses might overlap between the two cases"). "The convenience of the witnesses is often the most important factor in determining whether to grant a motion to transfer." *Id.* at *4. This is particularly true where, as here, there are third-party witnesses, because "[t]he convenience of non-party witnesses is given greater weight than the convenience of the parties." *George*, 2021 WL 2948910, at *4. Defendants anticipate the need for testimony from TFL employees, many of whom reside abroad and are likely witnesses in *Patterson*, where TFL is a party.[9] Similarly, testimony could be required from non-party witnesses involved in the Luna Foundation Guard, the organization formed to safeguard UST's peg and which Plaintiff references, who Defendants believe reside outside Illinois. *See, e.g.*, Compl. ¶ 63. "Requiring those same witnesses to testify in this case as well does not appear to be a more convenient outcome." *Aliano*, 2017 WL 56638, at *3; *see Hecker*, 2017 WL 2461546, at *5; *George*, 2021 WL 2948910, at *4 (duplicative testimony in two fora "would contravene the purpose of Section 1404(a)").

**Convenience of the parties.** The Northern District of Illinois is no more convenient than the Northern District of California for this New Jersey-resident Plaintiff. And it is far more

---

[8] "[B]ecause it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily," the location Jump Trading's employees "is of little significance." *Tavistock*, 2021 WL 1614519, at *7 (internal quotation marks omitted). Regardless, as noted above, many of Jump's cryptocurrency traders are located outside of the United States. Ex. C ¶ 2.

[9] In addition, while these witnesses are within the control of a party in the Northern District of California, as third-party witnesses outside of Illinois, they are not within control of the Court here.

inconvenient for Defendants to litigate the same set of facts twice, which is not outweighed by Defendants' presence in Chicago. *See Hecker*, 2017 WL 2461546, at *4 (holding California was more convenient for defendants due to the existence of another case there); *George*, 2021 WL 2948910, at *2 (transfers "to a district other than the defendant's home have been granted in many circumstances"). The Northern District of California is thus more convenient for the parties.

**Plaintiff's choice of forum.** Plaintiff's choice of the Northern District of Illinois is immaterial. While Plaintiff's choice of forum is often afforded some deference, courts "discount the importance of the plaintiff's chosen forum where the plaintiff is a nonresident of the forum." *Eugene v. McDonald's Corp.*, 1996 WL 411444, at *2 (N.D. Ill. July 18, 1996); *see George*, 2021 WL 2948910, at *2. In addition, "the importance of the plaintiff's choice of forum is reduced when . . . few relevant events occurred in the forum," *Braddock v. Jolie*, 2012 WL 2282219, at *3 (N.D. Ill. June 15, 2012), the case is a nationwide class action, *see Jaramillo*, 664 F. Supp. 2d at 914, and there are nearly identical proceedings in the transferee forum, *see George*, 2021 WL 2948910, at *3. Plaintiff is a New Jersey resident, purports to represent a nationwide class, and is represented by lawyers in California and New York. The relevant events here occurred worldwide, and *Patterson* has long been pending in the Northern District of California. With all of these diminishing factors present, Plaintiff's choice of this District should bear no weight.

**Situs of material events and relative ease of access to evidence.** As explained above, while Mr. Kariya and Jump Trading are located in Chicago, the legally significant events in this case occurred nationwide, if not worldwide, as the Terra ecosystem and related tokens were developed outside of Illinois, and Jump Trading Group's cryptocurrency trading largely occurs outside the United States. Ex. C ¶¶ 1–2. Additionally, where Defendants are accused of making false representations nationwide (or, as here, worldwide), Defendants' location is not significant.

13

*See Aliano*, 2017 WL 56638, at *2 ("it is true that Defendant is headquartered in Illinois, and thus it is likely that many of the decisions about the marketing of Defendant's products were made here. But it is also the case that Defendant's allegedly false representations were part of a nationwide marketing scheme"); *George*, 2021 WL 2948910, at *3.

Even were Illinois the location of material events, the relevant documents here are just as easily accessed in California because they are all stored electronically. "With the advent of electronic discovery, where records are actually stored is less of a factor." *Aliano*, 2017 WL 56638, at *2; *see Tavistock*, 2021 WL 1614519, at *6. Electronic documents "makes for an easy transfer to any forum." *George*, 2021 WL 2948910, at *4. The Northern District of Illinois therefore has minimal connection with the core facts and documents of this case.

Ultimately, the Northern District of Illinois is not a convenient forum where, as here, non-party witnesses would have to give duplicative testimony in two separate matters in two different districts, a non-resident Plaintiff purports to represent a nationwide class, Defendants must litigate the same events in California, and the relevant information and evidence are not tied to the District.

**IV.     Judge Rakoff's Denial of Transfer Is Not Applicable Here.**

Plaintiff argued in his opposition to Defendants' motion for an extension, ECF No. 14, that transfer was unlikely to be granted here because Judge Rakoff denied transfer in *Albright v. Terraform Labs, Pte. Ltd.*, -- F. Supp. 3d. --, 2022 WL 16985806, at *5 (S.D.N.Y. Nov. 15, 2022). But that litigation (which has now been dismissed) is neither controlling in this Court nor, given the applicable law in this Court and the different procedural posture, persuasive.

Much of Judge Rakoff's determination in *Albright* was driven by the timeframe at issue there. *Id.* at *4–*5. But the timelines at issue here differ significantly from *Albright*, which was filed around two months after *Patterson*, when the Lead Plaintiff had not yet been selected—a fact

14

expressly highlighted by Judge Rakoff. *Id.* at *5. By contrast, the present case was filed nearly a year after *Patterson*, five months after Judge Thompson selected a Lead Plaintiff and Counsel, and after the submission of motions to dismiss and compel arbitration.

Defendants respectfully submit that the remainder of Judge Rakoff's decision does not comport with the law of the Seventh Circuit. His analysis of the similarity of the cases focused on the type of legal claim brought, but this District's precedent instructs that the analysis must instead assess the underlying facts in each case. *See Jaramillo*, 664 F. Supp. 2d at 916. His decision is contradicted by the numerous cases in this District transferring cases to districts where a substantially similar case is pending based on considerations of efficiency and convenience. *See, e.g.*, *De Falco*, 2013 WL 1122825, at *11; *Hecker*, 2017 WL 2461546, at *6. Further, Judge Rakoff's concern about preemption of *Albright*'s racketeering claim (and its treble damages) under the PSLRA were the case to be transferred to the Northern District of California is inapplicable here. Plaintiff does not assert a racketeering claim, nor are his claims (though deficient for other reasons) expressly preempted under the PSLRA. Plaintiff's attempt to equate supposedly *incompatible* commodities and securities claims with Judge Rakoff's concern regarding *statutory preclusion* of racketeering claims under the PSLRA should not be credited. Complaints regularly plead incompatible claims, like Plaintiff's own unjust enrichment claim and CEA claims. None of Judge Rakoff's justifications for denying Defendants' motion to transfer are present here, and instead the factors the Court is to consider—the interest of justice and convenience of the parties and witnesses—weigh strongly in favor of transfer to the Northern District of California.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court exercise its discretion and transfer this case to the U.S. District Court for the Northern District of California.

15

Dated: June 9, 2023                              Respectfully submitted,

                                              KOBRE & KIM LLP

/s/ Jonathan D. Cogan
Jonathan D. Cogan
Steven W. Perlstein (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com

Erika L. Berman (admitted *pro hac vice*)
1919 M Street, NW
Washington, DC 20036
Telephone: (202) 664-1900
erika.berman@kobrekim.com

Olivia St. Clair Long (Bar No. 6301704)
O. LONG LAW LLC
820 Davis St., Suite 452
Evanston, IL 60201
Telephone: (847) 556-8846
olivia@olonglaw.com

*Attorneys for Defendant Jump Trading, LLC*


ZUCKERMAN SPAEDER LLP

/s/ R. Miles Clark
Aitan Goelman (*pro hac vice* forthcoming)
R. Miles Clark (*pro hac vice* pending)
1800 M Street, NW, Suite 1000
Washington, DC 20036
Telephone: (212) 778-1800
agoelman@zuckerman.com
mclark@zuckerman.com

*Attorneys for Defendant Kanav Kariya*