IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Taewoo Kim, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Jump Trading, LLC, and Kanav Kariya,<br><br>Defendants. | No. 23 CV 2921<br><br>Honorable Nancy L. Maldonado |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Taewoo Kim brings this class action against Defendants Jump Trading, LLC, and Kanav Kariya ("Defendants"), alleging multiple violations of the Commodity Exchange Act based on Defendants' purported role in the collapse of the Terra cryptocurrency system. Defendants have filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). (Dkt. 28.)[1] Defendants assert that this case should be transferred to the United States District Court for the Northern District of California, where a class action under the Securities Exchange Act naming Jump Trading and Kariya as defendants and also relating to the Terra cryptocurrency collapse, has been proceeding for nearly two years. Kim opposes transfer and argues that the case should continue in the Northern District of Illinois. (Dkt. 30.) The Court has reviewed the parties' briefing and, for the following reasons, denies Defendants' motion to transfer venue. Defendants shall answer or otherwise plead within 21 days of this order.

---

[1] In citations to the record, page numbers are taken from the CM/ECF headers.

1

## Background[2]

### A. The Terra Cryptocurrency System and the Instant Lawsuit

This class action suit arises from the collapse of the cryptocurrency system of digital assets sold by Do Kwon and his company Terraform Labs Pte. Ltd. ("TFL"). (Dkt. 1, Compl. ¶ 1.) Kwon and TFL began selling various digital assets in 2019, including LUNA, UST, and aUST. (*Id.* ¶ 2.) According to the Complaint, Defendant Jump Trading, LLC, was an early partner and a primary financial backer of Kwon's TFL and entered into a series of agreements with TFL starting in November 2019 to provide "market-making services" for transactions in LUNA, UST, and aUST assets. (*Id.* ¶ 3.) Defendant Kariya is the current president of Jump Trading's cryptocurrency arm. (*Id.* ¶ 12.) Kariya is an Illinois resident, and Jump Trading is a Delaware corporation with its principal place of business in Chicago, Illinois. (*Id.* ¶¶ 11–12.)

Kwon and TFL intended for LUNA to function much like other well-known digital assets, such as Bitcoin, with a value that fluctuated based on market conditions, supply and demand, and its perceived value. (*Id.* ¶ 2.) For UST, on the other hand, Kwon and TFL purportedly intended for the asset to function as a so-called "stablecoin," with a constant value "pegged" at $1, in order to be a safe and reliable place to store crypto assets. (*Id.*) According to Kwon and TFL, the $1 price of UST would be automatically maintained through an algorithm which allowed UST to be exchanged for $1 worth of LUNA assets, and vice versa, which would theoretically allow for arbitrage and correct any deviations in the UST price to keep it at the stable price of $1. (*Id.*) In addition to providing a purportedly safe and stable crypto-asset, Kwon marketed that owners of UST could deposit their assets back with TFL in a "yield-bearing" savings account. (*Id.*) Similar

---

[2] In resolving a motion to transfer venue, the Court generally takes the allegations in the Complaint to be true, unless the facts are controverted by affidavits or evidence from the defendant. *See Adlife Mktg. & Commc'ns Co. v. Fareway Stores, Inc.*, No. 4:17-CV-04254-SLD-JEH, 2018 WL 5629734, at *1 (C.D. Ill. Apr. 26, 2018).

to a traditional savings-and-loan bank, owners of UST would deposit their assets in an account with TFL, and in exchange would receive an aUST token as a "receipt" for their amount of UST deposited. (*Id.* ¶¶ 2, 45.) That aUST token could later be redeemed for the original amount of UST assets deposited, plus interest. (*Id.*)

Starting around May 2021, TFL's algorithm failed to keep the price of UST consistently pegged at $1. (*Id.* ¶ 4.) The constant $1 value was fundamental to the perceived market value of both UST and aUST, but Kim alleges that rather than publicly acknowledge the inability of the algorithm to maintain the stable price, TFL and Kwon schemed with Jump Trading to manipulate market prices for UST and aUST by making secret coordinated trades to prop up UST to its $1 peg value. (*Id.*) Jump Trading purportedly purchased more than 62 million UST tokens in May 2021 to artificially inflate the price of UST to $1 and was allegedly rewarded by TFL and Kwon with more than 61.4 million LUNA tokens at a substantial discount, which Jump Trading then redeemed for more than $1.28 billion in profits. (*Id.* ¶ 5.) The scheme allowed TFL, Kwon, and Jump Trading to continue to work together to grow the UST and aUST business. (*Id.* ¶ 7.)

But a year later in May 2022, the price of UST dropped dramatically again due to the failure of the algorithm. (*Id.* ¶¶ 7, 72–74.) With no artificial support from Jump Trading this time, the value of UST and aUST plummeted quickly to virtually nothing, leading to the collapse of not only those assets, but also LUNA assets and the entire TFL cryptocurrency system. (*Id.*) The collapse destroyed nearly $40 billion worth of market value, including $18 billion in UST and aUST assets. (*Id.* ¶ 75.) Purchasers of UST, and those who had deposited their UST assets in exchange for aUST receipts on the promise of interest, lost everything. (*Id.*)

Plaintiff Kim, a New Jersey resident, alleges he was one such individual harmed by the scheme among Kwon, TFL, and Jump Trading. Kim asserts that he made several UST and aUST

3

purchases between November 2021 and April 2022, and that he suffered more than $100,000 in economic losses when those assets collapsed. (*Id.* ¶¶ 83–85.) Kim filed the instant class action suit on May 9, 2023, alleging that Jump Trading and Kariya, as the head of its cryptocurrency trading apparatus, engaged in an unlawful scheme with Kwon and TFL to manipulate the price of UST and aUST assets and mislead the public about the value and stability of those assets. (*Id.* at 29–41.) Kim brings claims against Defendants under several provisions of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.*, for price manipulation and aiding and abetting price manipulation, as well as a state law claim for unjust enrichment. (*Id.*) Kim seeks to certify a class of all persons who, during the relevant period between May 23, 2021, and May 31, 2022, purchased UST or aUST in the United States and were damaged as a result of Defendants' alleged price manipulation and scheme with Kwon and TFL. (*Id.* ¶ 87.)

On June 9, 2023, Defendants responded to Kim's Complaint by filing the instant motion to transfer venue to the Northern District of California, based on the pendency of a similar class action in that district court. (Dkt. 28.)

B. The *Patterson* Case Pending in the Northern District of California

In June 2022, nearly a year prior to the filing of this lawsuit, another plaintiff, Nick Patterson, initiated a similar class action in the Northern District of California based on the same underlying facts at issue here. (*See* Dkt. 28-1); *see also Patterson v. Terraform Labs, Pte. Ltd.*, No. 3:22-cv-03600 (N.D. Cal. filed June 17, 2022). The original complaint in that case named as defendants Kwon, TFL, Jump Trading, and a number of other entities and individual defendants who allegedly backed and provided financial support to Kwon and TFL. (Dkt. 28-2.) The complaint asserted claims under multiple federal statutes, including the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act

4

("RICO"), as well as various California state law claims. (*Id.* at 67–87.) Pursuant to the statutory provisions for private securities class actions, the *Patterson* court promptly considered the selection of lead plaintiff and lead counsel. *See generally* 15 U.S.C. § 78u–4. After publicized notice to the potential class members, the court issued an order on December 13, 2022, appointing lead counsel and a lead plaintiff named Michael Tobias. (Dkt. 28-1.) Patterson remained as a named plaintiff and, together with Tobias, filed a second amended complaint on February 23, 2023, repleading the same class claims under federal and state law from the original complaint, as well as adding additional causes of action. (Dkt. 28-2.) Similar to this case, the *Patterson* plaintiffs seek to certify a class of all persons who purchased digital cryptocurrency assets from TFL between May 20, 2021, and May 25, 2022, and who were damaged by the collapse of the system. (*Id.* ¶¶ 1, 229.)

On May 2, 2023—one week before Kim initiated the instant suit in this District—Jump Trading responded to the second amended complaint in *Patterson* by filing a motion to dismiss pursuant to Rule 12(b)(6), as well as a separate motion to compel arbitration. (Dkt. 28-1.). Those motions were pending as of the time Jump Trading filed its motion to transfer venue in this case, but there have since been several additional developments in *Patterson* during the time the motion to transfer has been under advisement before this Court. First, in September 2023, the *Patterson* plaintiffs voluntarily dismissed their claims against all defendants other than Jump Trading. (*See* Dkt. 38.) Then, on January 4, 2024, the *Patterson* court issued an order denying Jump Trading's motion to compel arbitration and granting its motion to dismiss the second amended complaint. (Dkt. 46); *See generally*, *Patterson v. Jump Trading LLC*, No. 22-CV-03600-PCP, 2024 WL 49055 (N.D. Cal. Jan. 4, 2024). The *Patterson* plaintiffs proceeded to file a third amended complaint, which added Kariya, as well as Jump Trading's co-founder William DiSomma, as defendants in

5

that case. The operative third amended complaint brings claims under the Securities Exchange Act and Securities Act and includes the same proposed class action for all individuals who purchased digital cryptocurrency assets from TFL between May 20, 2021, and May 25, 2022, and who were damaged by the collapse of the system. (*See generally* Dkt. 46-1.)

After the filing of the third amended complaint, Jump Trading filed an appeal of the district court's denial of its motion to compel arbitration to the Ninth Circuit, and the district court subsequently stayed the case pending resolution of the appeal. (Dkt. 46.) The appeal will be fully briefed in July 2024, and defendants Jump Trading, Kariya, and DiSomma will have 60 days after the remand from the Ninth Circuit to respond to the third amended complaint.

In light of the developments, the Court requested that the parties file supplemental position statements indicating how those developments impacted their arguments for and against transfer, if at all. (Dkt. 46.) The Court has now reviewed the parties' supplemental statements and all their associating briefing on the pending motion, and its decision follows below.

## Discussion

Defendants move to transfer this case to the Northern District of California, where *Patterson* is pending, pursuant to 28 U.S.C. § 1404(a). That statute states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Under this provision, the Court may transfer a case to another district provided that jurisdiction and venue are proper in both the transferor and transferee court. *See Hanover Ins. Co. v. N. Bldg. Co.*, 891 F. Supp. 2d 1019, 1025 (N.D. Ill. 2012). In evaluating transfer, the Court is to consider various public and private interest factors to determine whether transfer would serve the convenience of the parties and witnesses, and whether it would be in the interest of justice. *Id.*; *see*

6

*Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 62 (2013).

Section 1404(a) "permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc*., 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988)). The party seeking transfer "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" than the transferor. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir. 1986). The task of weighing the relevant factors "is committed to the sound discretion of the trial judge." *Id*. at 219.

Defendants argue that jurisdiction and venue in the Northern District of California are proper, and that the relevant private and public interest factors weigh in favor of trying this case in that district court as opposed to the Northern District of Illinois. Kim argues in response that Defendants have failed to demonstrate that jurisdiction and venue exist in the Northern District of California, and further argues that transfer would not serve the interest of justice, and that California is not a clearly more convenient forum than Illinois.

The Court ultimately agrees with Kim that Defendants have not met their burden to show that transfer would serve the interest of justice and the convenience of the parties and witnesses. In other words, Defendants have not established that the Northern District of California is the "clearly more convenient forum." The Court therefore need not address the parties' threshold dispute over whether personal jurisdiction and venue exist in the Northern District of California, because even assuming that it does, Defendants' motion to transfer fails.

### A. Convenience of the parties and witnesses

Beginning with the private interest analysis, those factors include the plaintiff's choice of forum, the situs of the material events, the convenience of the parties and witnesses, and the relative ease of access to evidence. *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). Not surprisingly, each party presents divergent views on how each applicable private interest factor weighs in this case. Upon considering the parties' arguments, the Court finds that the private interest factors, on balance, weigh slightly against transfer.

First, the Court finds that the convenience of the witnesses' factor is neutral and does not weigh strongly either way. The Court credits Defendants point that there is overlap between the potential witnesses in this case and *Patterson*. There therefore may be some potential imposition on witnesses, in particular third-party witnesses, who may be forced to participate in discovery in two different forums if the case is not transferred. For example, it is likely the parties here would seek testimony from non-parties who were originally named as defendants in the *Patterson* action, at least some of whom appear to be based in California, and there would undoubtedly be at least some measure of inconvenience to those California-based witnesses in having to sit for depositions in both forums.

On the other hand, the Court credits Kim's point in his supplemental filings that many key witnesses in this case and *Patterson*, including Kwon himself and potential TFL employees, reside internationally and may be outside of the subpoena power of either court. Thus, the hypothetical inconvenience to international witnesses may never materialize, as many may not ultimately be capable of being deposed in *either* case. Additionally, Kim points out that transfer would create an inconvenience for those Jump Trading witnesses who are based in Illinois. Defendants correctly point out that, to the extent any Jump Trading witnesses are still employed and under the control

8

of Jump Trading, it would be expected that Jump Trading would make them available regardless of whether the case is in Illinois or California. *See Tavistock Rest. Grp., LLC v. Zurich Am. Ins. Co.*, No. 20-CV-04364, 2021 WL 1614519, at *7 (N.D. Ill. Apr. 26, 2021) ("[B]ecause 'it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily,' the location of either party's employees is of little significance.") (citations omitted). But Kim notes that he will likely seek to depose *former* Jump Trading witnesses as well who reside in this District, and that transfer would not only inconvenience those Illinois-based witnesses but would also cause outright prejudice to Kim as those individuals would be outside the subpoena power of California.

The Court thus finds that the convenience factor for witnesses is neutral; while California may be more convenient for some witnesses, it may be less for others who are based in Illinois. To the extent Defendants claim there is an inconvenience from the fact that witnesses may be called to participate in identical discovery in two different proceedings, the Court notes that, even if it were to order transfer, there is no guarantee that this case would be ultimately consolidated into the same proceeding as *Patterson*. Witnesses may therefore be required to participate in discovery in two cases regardless of which fora they are in. In any event, any inconvenience to witnesses from duplicative discovery can be easily remedied; parties coordinate discovery amongst different proceedings all the time, and there is no reason Defendants, who are named in both cases, could not attempt to work with Kim and the *Patterson* plaintiffs to coordinate discovery between the two matters to minimize duplication and the burden on witnesses. Furthermore, the Court observes that, in the modern age of litigation, particularly in the post-COVID-19 era, remote or video depositions and electronic discovery have become exceedingly common practice. There are thus ample means to minimize any inconvenience, such as it exists.

9

Second, as to the convenience of the parties, the Court finds that this factor weighs against transfer, as Kim might not only be inconvenienced but prejudiced in his ability to subpoena witnesses if this case is transferred to California. While the Court acknowledges some inconvenience to Defendants in litigating two different class actions in two different forums, Defendants actually reside within *this* District. Any convenience from litigating the cases together in California would seem to be balanced out by the inconvenience to Defendants, and their Illinois-based witnesses, that would be caused by removing this case from Defendants' home forum. Further, Kim is not a party in *Patterson,* and as a New Jersey resident would face at least some measure of increased inconvenience in being forced to litigate his claims in California, as opposed to the geographically-closer Illinois. The Court thus finds this factor tilts in favor of this forum.

This leads to the next factor: Kim's choice of forum. "In considering whether to transfer an action the court should 'give some weight to the plaintiff's choice of forum.'" *N.H. Ins. Co. v. Green Dragon Trading Co*., No. 08 C 1326, 2008 WL 2477484, at *6 (N.D. Ill. June 17, 2008) (citation omitted). It is true, as Defendants point out, that "[t]he plaintiff's choice is given less weight when the plaintiff is a non-resident of the chosen forum, when the plaintiff sues derivatively or as a class representative, and where the cause of action did not conclusively arise in the chosen forum." *Countryman v. Stein Roe & Farnham*, 681 F. Supp. 479, 482–83 (N.D. Ill. 1987); *see also Beesley v. Int'l Paper Co.*, No. 06-CV-703-DRH, 2007 WL 2458228, at *2 (S.D. Ill. Aug. 24, 2007) (collecting cases from this Circuit holding that a plaintiff's choice of forum is entitled to no, or reduced, deference in class actions). Here, Kim is a non-resident of this forum purporting to bring a nationwide class action on behalf of all individuals who purchased UST and aUST digital assets from TFL and who were harmed by Defendants' conduct. While it is true that Defendants are based in this forum, the events underlying this action did not "conclusively" arise solely in this

10

District, but also appear to have emanated from a variety of locations, including California (according to the *Patterson* complaint) and overseas. In addition, Defendants have submitted an affidavit indicating that most of their cryptocurrency trading is conducted internationally. (Dkt. 28-3.) These considerations suggest that Kim's choice of forum here is not entitled to significant deference, and therefore only weighs against transfer in the slightest.

Next, with respect to the situs of material events, this factor also weighs against transfer. Kim argues that Defendants' decision-making surrounding the events at issue, including the decisions underling Kariya's statements that form the basis of some of Kim's allegations, likely took place substantially in Illinois, where Defendants are based. Further, Kim rests his claims in part on misrepresentations made by Kariya, who is based in Illinois. This suggests that at least some material events and decisions emanated from Illinois. The Court acknowledges Defendants' point that their cryptocurrency trading is conducted overseas, and therefore while Defendants' activities may have flowed from decisions in Illinois, their actual conduct giving rise to Kim's claims may have taken place overseas. *See First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, No. 04 C 2728, 2004 WL 1921059, at *3 (N.D. Ill. July 21, 2004) ("[T]he location of material events for purposes of venue is the location where the defendant's decisions and activities that gave rise to the claim took place."). Thus, to the extent that Defendants' decisions were made in Illinois, those decisions are alleged to have been part of a larger scheme to manipulate an international cryptocurrency system market. The situs of material events here then is exceedingly diffuse, with critical actions and decisions being made in a number of locations nationally and internationally. But ultimately, Defendants are still based in this District, including Kariya whose statements are a critical piece of Kim's claims. This suggests that Defendants' decisions and activities giving rise to the claims, such as they can be identified with any particular District,

11

emanated from here. The factor thus weighs slightly against transfer.

Finally, as to access to evidence, this factor is neutral. While it is true Defendants may house relevant documents and evidence in their headquarters in Chicago, Defendants aver that all of the materials are electronically available and therefore the documents are just as easily accessed in California as in Illinois. (Dkt. 28 at 18.)

In sum, the Court finds on balance that the private interest factors do not support transfer. The convenience of the parties and the situs of the material events weighs slightly against transfer, as Kim would be prejudiced if the case were transferred to California and Defendants' activities and decision-making giving rise to the claims at issue emanated from this District. The remaining private interest factors are neutral at best and do not weigh strongly for or against transfer. Defendants have accordingly failed to demonstrate that transfer would be in the best interest of the convenience of the witnesses and the parties. The Court could likely stop its analysis here then, as both the private and public interest factors must support transfer to justify it. In the interest of completeness, however, the Court will examine the public interest factors, which the Court concludes likewise do not support transfer.

### B. Whether transfer is in the interest of justice

The public interest analysis "focuses on the efficient administration of the court system, rather than the private considerations of the litigants." *See Amoco Oil Co.*, 90 F. Supp. 2d at 961–62 (quoting *Espino v. Top Draw Freight Sys., Inc.*, 713 F. Supp. 1243, 1245 (N.D. Ill. 1989)). Those public considerations include "the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale." *Id.* at 962. Again, the parties vehemently disagree as to the analysis of these factors. But as previewed above, the Court finds these public

12

interest factors weigh against transfer.

As to the first factor, the speed at which the case will be tried, this factor weighs against transfer. Defendants point out that the available public data indicate that the Northern District of California has a much quicker time between the filing of complaints to trial—more than one year shorter on average. (Dkt. 28 at 13) (citing United States District Courts, *Nat'l Jud. Caseload Profile*, 47, 66, available at https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile0331.2023.pdf). But as Kim points out in response, the Northern District of Illinois is actually quicker on the metric of the median number of months of filing to disposition, with cases resolved on average one month quicker than in the Northern District of California. (Dkt. 30 at 16) (citation omitted). This latter statistic is the more relevant one, given that complex class actions rarely make it to trial and are typically disposed of through initial pleadings, settlement after class certification, or summary judgment. Furthermore, as Kim points out in his supplemental filing, the *Patterson* case is now stayed pending appeal, and the Ninth Circuit averages nearly 13 months from notice of appeal to final order. (Dkt. 46 at 4) (citation omitted). Once the *Patterson* case returns from appeal (if the Ninth Circuit affirms the denial of arbitration), Defendants will have an opportunity to answer or otherwise respond to the third amended complaint. Both cases are therefore at the initial pleading stage, but *Patterson* likely will not be moving forward for at least one year. And if this case is transferred, it seems likely it would not proceed until the *Patterson* appeal is resolved. Proceeding in this District will therefore likely be quicker, and this public interest factor thus weighs against transfer.

In terms of the familiarity with applicable law, this factor is neutral. This case is primarily based on federal law under the CEA, and therefore both this Court and the Northern District of California are considered equally familiar with the law at issue and capable of applying it. *See*

13

*Native Am. Arts, Inc. v. Milne Jewelry Co.*, No. 05 C 6203, 2006 WL 8461635, at *5 (N.D. Ill. June 16, 2006) ("[F]ederal courts are equally competent to decide issues of federal law regardless of whether the precise issue has arisen in that district."). In terms of the unjust enrichment claim under Illinois state law, while a federal court sitting in Illinois has more familiarity with Illinois state law claims, federal courts are generally accustomed to applying the laws of foreign states. *See De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at *11 n.10 (N.D. Ill. Mar. 18, 2013) (citing *Miller v. SKF USA, Inc.*, No. 10 C 6191, 2010 WL 5463809, at *3 (N.D. Ill. Dec. 29, 2010)). On balance then, both courts would be equally competent to adjudicate Kim's federal and state law claims. The Court finds that this factor is neutral and does not weigh for or against transfer.

Finally, in terms of the desirability of resolving controversies in their locale, and the relationship of the forum to the occurrence at issue, the Court finds that this factor weighs against transfer. Defendants note that Kim has alleged a national, if not international, scheme wherein Defendants allegedly conspired with international figures Kwon and TFL to manipulate the prices of an international cryptocurrency system. Given the widespread and global impact of the collapse of the Terra cryptocurrency system, Defendants maintain that any forum would likely have an equal desire in resolving this controversy. Further, Defendants note that the allegations in *Patterson* suggest that the events and decisions underlying the promotion and ultimate collapse of the Terra cryptocurrency assets can just as easily be tied to individuals and entities located in the Northern District of California as Illinois.

Ultimately however, as discussed above in the context of the "situs of material events" private interest factor, the Court is persuaded by Kim's argument that Defendants' location in Illinois suggests that this forum has a stronger interest in resolving this case than the Northern

14

District of California. While some of the events underlying this case and the collapse of the Terra cryptocurrency system may have emanated from California, and the case may be tied to a broader, international series of events and individuals, Kim has brought suit against two Defendants who reside in this District. This District Court plainly has an interest in resolving a controversy involving two of its residents. The factor thus weighs against transfer.

In sum, the public interest factors do not support transfer but instead weigh against transfer to the Northern District of California. The Court acknowledges Defendants' argument, raised throughout their briefing, that the overlapping factual nature of the two cases creates a risk of inconsistent rulings on the same or similar legal issues, such as arbitrability or the appropriateness of class treatment. But this risk alone does not render the Northern District of California a more convenient forum for this case than the Northern District of Illinois. Rather the public and private interest factors detailed above suggest that the convenience and interest of justice as between these two cases weighs slightly in favor of this District. The fact that the *Patterson* plaintiffs happened to file their case first and chose to litigate their claims in California does not change that balance.

The Court thus finds that Defendants have failed to meet their burden to demonstrate that transfer of this case would serve the convenience of the parties and witnesses and the interest of justice.

## Conclusion

For the foregoing reasons, Defendants' motion to transfer is denied. Defendants should answer or otherwise plead in 21 days.

ENTERED:  6/6/24

                                               _____
                                               Nancy L. Maldonado
                                               United States District Court Judge