**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TAEWOO KIM, Individually and on Behalf of All Others Similarly Situated,<br><br>                            Plaintiff,<br>   v.<br><br>JUMP TRADING, LLC, and<br>KANAV KARIYA,<br><br>  Defendants. | No. 1:23-cv-02921<br><br><br><br>Honorable Joan H. Lefkow |

**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

RELEVANT BACKGROUND .................................................................................. 3

I.      The Terra Ecosystem ................................................................................... 3

II.     Plaintiff's Allegations Against Defendants ........................................................ 4

ARGUMENT ...................................................................................................... 5

I.      Plaintiff Does Not Adequately Allege Commodity Manipulation ..................................... 6

        a.      Plaintiff Does Not Allege the Existence of an Artificial Price ............................... 6

        b.      Plaintiff Does Not Allege Intent to Cause an Artificial Price ................................. 8

        c.      Plaintiff Does Not Allege that Defendants Had the Ability to Influence the
                Price of UST and aUST .................................................................................. 11

        d.      Plaintiff Does Not Allege that Mr. Kariya Was Involved in Any Trading ............ 12

II.     Plaintiff Does Not Adequately Allege Manipulative Contrivance .................................... 13

        a.      Plaintiff Does Not Allege Any Actionable Misstatements or Omissions ............ 13

                i.      Defendants Are Not Liable for Statements Made by Others ................... 13

                ii.     Plaintiff Does Not Adequately Allege that Defendants' Statements
                        Were Misleading ............................................................................... 15

        b.      Plaintiff Does Not Allege that Defendants Had the Requisite Intent to
                Mislead Via their Statements .............................................................................. 18

        c.      Plaintiff Does Not Allege that He or Anyone Else Relied on Defendants'
                Statements ..................................................................................................... 21

III.    Plaintiff Does Not Adequately Allege that Defendants Aided and Abetted TFL's
        CEA Violation ......................................................................................................... 22

IV.     Plaintiff's Inability to Allege CEA Claims Precludes His Unjust Enrichment Claim ....... 25

CONCLUSION ................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### <u>Cases</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 5, 7, 9

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) ......................................................................................... 17

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ..................................................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 5, 11, 19

*Borteanu v. Nikola Corp.*,
    2023 WL 1472852 (D. Ariz. Feb. 2, 2023) ............................................................... 14

*Braman v. The CME Group, Inc.*,
    149 F. Supp. 3d 874 (N.D. Ill. 2015) ................................................................. passim

*Brody v. Transitional Hospitals Corp.*,
    280 F.3d 997 (9th Cir. 2002) ................................................................................ 15, 18

*Brownmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir. 2012) ...................................................................................... 18

*Burdick v. Rosenthal Collins Group, LLC*,
    2012 WL 13026752 (N.D. Ohio July 26, 2012) ........................................................ 22

*CFTC v. Kraft Foods Group*,
    153 F. Supp. 3d 996 (N.D. Ill. 2015) ............................................................. 8, 13, 19

*CFTC v. Wilson*,
    2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018) ............................................... 6, 8, 9, 10

*Chiarella v. United States*,
    445 U.S. 222 (1980) ..................................................................................................... 15

*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) ...................................................................................... 25

*Damato v. Hermanson*,
    153 F.3d 464 (7th Cir. 1998) ...................................................................................... 22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ................................................................. 21

*Fulton County Employees Retirement Sys. v. MGIC Investment Corp.*,
    675 F.3d 1047 (7th Cir. 2012) ................................................ 14

*Gaines v. Guidant Corp.*,
    2004 WL 2538374 (S.D. Ind. Nov. 8, 2004) ...................... 16, 18

*GFL Advantage Fund, Ltd. v. Colkitt*,
    272 F.3d 189 (3d Cir. 2001) ...................................................... 9

*Greenberg v. Boettcher & Co.*,
    755 F. Supp. 776 (N.D. Ill. 1991) ........................................... 21

*Greer v. Advanced Equities, Inc.*,
    683 F. Supp. 2d 761 (N.D. Ill. 2010) ...................................... 20

*In re Amaranth Natural Gas Commodities Litigation*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008) ....................................... 8

*In re Commodity Exchange, Inc., Silver Futures and Options Trading Litigation*,
    2012 WL 6700236 (S.D.N.Y. Dec. 21. 2012) ................... 6, 7, 9

*In re Foreign Exchange Benchmark Rates Antitrust Litigation*,
    2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016) ........................ 12

*In re Kirkland Lake Gold Ltd. Securities Litigation*,
    2021 WL 4482151 (S.D.N.Y. Sept. 30, 2021) ........................ 14

*In re Northfield Laboratories, Inc. Securties Litigation*,
    267 F.R.D. 536 (N.D. Ill. 2010) .............................................. 21

*In re Rough Rice Commodity Litigation*,
    2012 WL 473091 (N.D. Ill. Feb. 9, 2012) ...................... passim

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) .......................................................... 13, 14

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) .................................................. 19

*Nicholas v. Saul Stone & Co. LLC*,
    224 F.3d 179 (3d Cir. 2000) .................................................... 22

*Phoenix Insurance Co. v. ATI Physical Therapy, Inc.*,
    690 F. Supp. 3d 862 (N.D. Ill. 2023) ...................................... 17

iv

*Ploss v. Kraft Foods Group, Inc.*,
   197 F. Supp. 3d 1037 (N.D. Ill. 2016) .................................................................... 5, 10, 11, 13

*Rosemond v. United States*,
   572 U.S. 65 (2014) ............................................................................................................ 22, 24

*Rubinstein v. Gonzalez*,
   2016 WL 1213931 (N.D. Ill. Mar. 29, 2016) ............................................................................ 17

*Schlifke v. Seafirst Corp.*,
   866 F.2d 935 (7th Cir. 1989) ...................................................................................................... 17

*SEC v. Ustian*,
   229 F. Supp. 3d 739 (N.D. Ill. 2017) .................................................................................. 15, 18

*Stransky v. Cummins Engine Co.*,
   51 F.3d 1329 (7th Cir. 1995) ............................................................................................... 15, 16

*Union v. Zimmer*,
   673 F. Supp. 2d 718 (S.D. Ind. 2009) ....................................................................................... 20

*United States v. Beck*,
   615 F.2d 441 (7th Cir. 1980) ...................................................................................................... 24

*United States v. Delgado*,
   972 F.3d 63 (2d Cir. 2020) .......................................................................................................... 24

*Weber v. E.D.&F. Man International, Inc.*,
   1999 WL 35326 (N.D. Ill. Jan. 13, 1999) ................................................................................. 25

*Wilber v. Bank of America, N.A.*,
   2015 WL 4040635 (C.D. Cal. June 29, 2015) .................................................................... 23, 24

## PRELIMINARY STATEMENT

Hoping to recover alleged losses resulting from his purchases of a cryptocurrency—the TerraUSD stablecoin ("UST") and a related token, aUST—Plaintiff has **not** sued the creators of those cryptocurrencies, despite alleging that they orchestrated a vast fraud.  Even though it was Terraform Labs Pte. Ltd. ("TFL") and its founder who created UST and aUST and who allegedly masterminded the fraudulent scheme, Plaintiff only sued an alleged investor, Jump Trading, LLC ("Jump Trading") and the president of Jump Trading's alleged crypto trading arm, Kanav Kariya.  Defendants, however, are not responsible for Plaintiff's losses.  It is not surprising, therefore, that Plaintiff has been unable to state a claim against Defendants.

Plaintiff's barebones allegations in his complaint are based upon little more than alleged purchases of UST during a period of volatility and a handful of benign statements by Defendants that reflected their excitement about UST and do not satisfy the pleading standards for any of his claims.  Each claim—(i) commodity manipulation under the Commodities Exchange Act ("CEA"); (ii) aiding and abetting TFL's commodity manipulation; and (iii) unjust enrichment— contains glaring deficiencies and fails because Plaintiff does not allege that Defendants committed any actionable misconduct.

*First*, Plaintiff's cause of action for commodity manipulation and manipulative contrivance (Count One) neither adequately nor plausibly alleges that Defendants committed market manipulation.  Plaintiff's manipulation claim asserts that Jump Trading bought UST during a period of volatility in May 2021 in order to prop UST's price back up when its price dropped below its US $1 peg.  But, even if true, those allegations fail to state a claim for manipulation under the CEA for multiple reasons:

- **No Artificial Price**. Plaintiff fails to allege any facts establishing that UST's price was artificial, i.e. that the price was inconsistent with the legitimate forces of supply and

demand, when it returned to US $1 after temporarily dropping below that price. Notably, Plaintiff concedes (as he must) that the price of UST—which was intended to remain at the stable value of $1—remained the same ($1) for years prior to, and a year following, the alleged manipulative trading, which squarely undermines any assertion that $1 was artificial in May 2021;

- *No Manipulative Intent.* Plaintiff does not (and cannot) allege that Defendants acted with manipulative intent, i.e., that they intended to cause an artificial price. This is because there is no allegation that Jump Trading bought UST at prices above what it *subjectively believed* UST to be worth. Buying an asset for less than one believes it is worth is not illegal; it is merely economically rational investing; and

- *No Ability to Influence Price.* Plaintiff fails to allege that Defendants had the ability to manipulate the price of UST with the alleged improper purchases; this is unsurprising given his concession that Jump Trading's purchases constituted only a tiny fraction of the market.

And as to Mr. Kariya personally, Plaintiff does not allege that he had any involvement in the trading discussed in the Complaint.

*Second*, Plaintiff's manipulative contrivance claim fails because he has not identified a single materially misleading statement made by Defendants. Instead, Plaintiff primarily relies on statements made by others (whom he has chosen not to sue) for which Defendants cannot be held liable. As for the few statements allegedly attributable to Defendants, Plaintiff does not claim they were false but rather only that they were misleading because they omitted any reference to Jump Trading's purchases of UST in May 2021. But Defendants had no obligation to disclose that trading, and the failure to include that information—which was not relevant to the statements—did not make the statements misleading. This claim also fails because Plaintiff neither adequately alleges that Defendants had the requisite intent with respect to any of these statements nor alleges any facts indicating that Plaintiff (or anyone else) relied on the purported misstatements.

*Third*, Plaintiff also fails to adequately allege that Defendants aided and abetted TFL's manipulation (Count Two). Plaintiff does not set forth facts supporting that Defendants knew of TFL's purported violations, intended to aid those violations, or took action to do so.

2

*Fourth*, Plaintiff's unjust enrichment claim (Count Three) against Jump Trading, which is based on the same allegations as his commodities claims, fails along with those claims.

Accordingly, and for the reasons discussed below, the Complaint must be dismissed.

## RELEVANT BACKGROUND

Plaintiff asserts claims against Jump Trading and Mr. Kariya for commodity manipulation and manipulative contrivance (Count I), aiding and abetting TFL's commodity manipulation and manipulative contrivance (Count II), and common law unjust enrichment (Count III).[1]

### I.     The Terra Ecosystem

Plaintiff's claims arise out of the Terra Ecosystem, a cryptocurrency blockchain developed by TFL in which he alleges Jump Trading was an early partner and liquidity provider. Compl.[2] ¶¶ 2–3. His case centers on two related cryptocurrency tokens: UST and aUST. UST was designed as an algorithmic "stablecoin," which is a type of cryptocurrency token intended to maintain a certain value—here, $1. *Id.* ¶ 2. In turn, one UST could be exchanged for $1 worth of UST's sister coin, LUNA. *Id.* Holders of UST could also deposit their UST into a "yield-bearing" account on the Terra blockchain called the Anchor Protocol. *Id.* Those who deposited UST into the Anchor Protocol received aUST as "a deposit receipt" that "could later be swapped for the original amount of UST, plus interest." *Id.*

In May 2021, the price of UST fell below $1 for several days before it regained its $1 "peg." *Id.* ¶ 4. In January 2022, TFL publicly announced the formation of the Luna Foundation Guard ("LFG"), which it said was to serve as an "asset reserve" for UST's $1 peg to help address

---

[1] For the purpose of this motion only, per the applicable standard, Defendants accept as true the allegations in the Complaint, including that UST is a commodity.

[2] Complaint, *Kim v. Jump Trading LLC*, No. 1:23-cv-02921, Dkt. No. 1 (N.D. Ill. May 9, 2023) (hereafter, "Compl.").

3

the risk that UST might potentially lose its peg and require additional support. *Id.* ¶ 63. The LFG reserve was funded by several firms, including an alleged division of Jump Trading. *Id.* Plaintiff alleges that the LFG had a six-member "Governing Council," which included Mr. Kariya. *Id.*

In May 2022, the price of UST fell below $1 again and, this time, did not recover; this led to the collapse of the Terra Ecosystem. *Id.* ¶ 7. Plaintiff claims this collapse caused losses to him and to a putative class who held UST and aUST in the Terra Ecosystem. *Id.* ¶ 1.

## II.      Plaintiff's Allegations Against Defendants

Plaintiff alleges Jump Trading was a third-party investor in the Terra Ecosystem and provided funding to TFL. *Id.* ¶ 1. Plaintiff alleges two categories of purported misconduct: manipulative trading and misrepresentations.

Plaintiff alleges that during the May 2021 depeg, from May 23 to May 27, 2021, Jump Trading purchased over 62 million UST tokens in a market with "approximately 2.1 billion UST tokens in circulation." *Id.* ¶¶ 47, 50. He claims that UST's market prices "began to rise on May 23, 2021, just as Jump began its large-scale purchases" and that Jump Trading's trading sent "a false signal to the market that TFL's algorithm had achieved the re-pegging of UST to its $1 peg." *Id.* ¶ 51. Plaintiff alleges that Jump Trading did so at TFL founder Do Kwon's request, and that Mr. Kwon "compensated" Jump Trading for this trading by modifying an existing loan agreement between TFL and Jump Trading. *Id.* ¶¶ 49, 52.

The Complaint sets forth a number of allegedly misleading statements, many of which were not made by Defendants. The few statements facially attributable to Defendants are:

- Mr. Kariya tweeted on September 14, 2021, that it had "'been a real pleasure' working with Kwon and TFL 'over the last couple years.'" *Id.* ¶ 60.

- Two officers of Jump Crypto published an article that "described UST as a 'prominent example' of an algorithmic stablecoin and 'the most elegant solution for creating a highly scalable and more decentralized stablecoin.'" *Id.* ¶ 61.

- In January 2022, Mr. Kariya tweeted a Twitter thread observing "'panic' surrounding UST" and opining that it was "difficult to imagine a sustained mass exodus to UST given the circumstances. In the event it occurs, there is potential for UST to be sold/burned and provide some downward pressure on LUNA price." *Id.* ¶ 65.

- On March 1, 2022, Mr. Kariya appeared on a podcast called the "The Ship Show" with Mr. Kwon and discussed Jump Trading's relationship with TFL, stating "it's been really, really awesome working with you and the rest of the Terra community for over two years now. Kind of quite stunning to think about how far things have come, so yeah, just want to say that it's been awesome." *Id.* ¶ 68. Mr. Kariya also allegedly referenced the LFG and highlighted the importance of LUNA liquidity at times where "the UST economy is significantly contracting or expanding." *Id.*

- On March 8, 2022, Mr. Kariya tweeted that "UST is in high demand and is generally trading at a premium." *Id.* ¶ 69.

Plaintiff claims that these statements were misleading because they did not disclose Jump Trading's trading during the May 2021 depeg. *See, e.g., id.* ¶¶ 60, 61, 65, 68, 69.

## ARGUMENT

Plaintiff's allegations fall far short of what is required to state a claim against Jump Trading and Mr. Kariya, as he fails to allege they committed any actionable misconduct. Instead, the Complaint is replete with allegations of actions by others and conclusory statements, which are insufficient to state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding an actionable claim "requires more than labels and conclusions," or a "formulaic recitation of the elements"). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's CEA claims also fail to satisfy the heightened standards of Federal Rule of Civil Procedure Rule 9(b), which apply because his manipulative contrivance claim is based on alleged explicit misrepresentations and thus sounds in fraud. *See Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037, 1057 (N.D. Ill. 2016). Plaintiff's manipulation claim, which is asserted in the same cause of action as his manipulative contrivance claim (Count One) and characterizes Jump Trading's trading activity as sending "a false signal to the market" and "restor[ing] the false

appearance of UST's $1 peg," Compl. ¶¶ 49, 51, 95, 111, likewise sounds in fraud and thus is also subject to Rule 9(b). Plaintiff fails to meet even Rule 8(a)'s pleading requirements, much less the exacting standard imposed by Rule 9(b). Accordingly, his claims must be dismissed.

## I. Plaintiff Does Not Adequately Allege Commodity Manipulation

Plaintiff's theory is that because Jump Trading allegedly intended to restore the peg to $1 with its May 2021 UST purchases, Defendants committed actionable commodity manipulation. But that allegation is insufficient to plead market manipulation as a matter of law. "To bring a claim under Section 9(a), a plaintiff must establish that: (1) the defendant had the ability to manipulate market prices; (2) an artificial price existed; (3) the defendant caused the artificial price to exist; and (4) the defendant specifically intended the artificial price to exist." *In re Rough Rice Commodity Litig.*, 2012 WL 473091, at *5 (N.D. Ill. Feb. 9, 2012). The Complaint fails on every element. It fails adequately to allege that the price of UST was artificial, that Defendants intended to create an artificial price, or that they had the ability to create an artificial price.

### a. Plaintiff Does Not Allege the Existence of an Artificial Price

Plaintiff's failure to allege that the prices of UST and aUST were artificial when they returned to $1 in May 2021 precludes his manipulation claim. Commodity manipulation requires an artificial price. *CFTC v. Wilson*, 2018 WL 6322024, at *15 (S.D.N.Y. Nov. 30, 2018) (artificiality is a "central" element of market manipulation). To determine whether an artificial price exists, "courts look to whether the price is affected by a factor that is not a legitimate part of the economic pricing of the commodity." *Rough Rice*, 2012 WL 473091, at *6 (internal quotation marks omitted); *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litig.*, 2012 WL 6700236, at *10 (S.D.N.Y. Dec. 21. 2012) ("*Silver Futures*") (Defendant must have "acted (or failed to act) with the purpose . . . of [a]ffecting a price or price trend in the market *that did not reflect the legitimate forces of supply and demand*" (emphasis added) (internal quotation marks

omitted)). Plaintiff has not offered any non-conclusory allegations supporting an interference that the price of UST and aUST was not driven by legitimate supply and demand.

Plaintiff's allegations of artificiality are limited to boilerplate recitations that the peg was "artificially restore[d]" and UST's price was "artificially inflated" and "not representative of true supply and demand." Compl. ¶¶ 50, 109, 111. Courts have rejected allegations of artificiality far more robust than these. *See, e.g.*, *Rough Rice*, 2012 WL 473091, at *6 (rejecting plaintiffs' allegations of artificial prices based on price fluctuations they "contend[ed] [were] unusual market prices"); *Silver Futures*, 2012 WL 6700236, at *13 (rejecting plaintiffs' allegation of artificial prices based on attempted calculations of what silver prices ought to have been without defendants' alleged manipulation). These are precisely the type of pleading that *Iqbal* and *Twombly* prohibit, s*ee Iqbal*, 556 U.S. at 678, and also fall far short of Rule 9(b)'s heightened standard.

In fact, Plaintiff's own allegations support the conclusion that UST's price was not artificial in May 2021. Plaintiff alleges no disruptions to UST's $1 peg in the over two years it was trading before the May 2021 depeg. Compl. ¶¶ 37–39, 48. Plaintiff then claims one isolated instance where the price briefly dipped below $1 before, according to Plaintiff, UST regained and then maintained its peg for nearly a full year, without any additional alleged manipulative trading. *See id.* ¶¶ 49–52, 73. Plaintiff's conclusory claim of an artificial price is further undermined by his admission, as discussed in detail below, that Jump Trading's alleged purchases during the May 2021 depeg constituted a mere three percent of the available UST. *See id.* ¶¶ 47, 50. UST's price stability without additional alleged manipulative trading, as well as the admitted limited scope of the alleged manipulative trading, contradicts Plaintiff's allegations of an artificial price.

Nor can Plaintiff establish an artificial price simply by claiming that Jump Trading's alleged trading "artificially restored" the peg. Even had Plaintiff properly alleged misconduct by

Jump Trading, allegations of "misconduct alone is not proof of price artificiality." *CFTC v. Kraft Foods Grp.*, 153 F. Supp. 3d 996, 1022 (N.D. Ill. 2015) (internal quotation marks omitted). Courts have rejected precisely this circular reasoning that intent to move the price of a product establishes that an artificial price actually existed. *See Wilson*, 2018 WL 6322024, at *15.

### b. Plaintiff Does Not Allege Intent to Cause an Artificial Price

Plaintiff does not adequately allege an intent to cause an artificial price because he has not pleaded that Defendants did not genuinely value UST at $1 at the time of Jump Trading's alleged trading in May 2021. Plaintiff must allege intent to create an artificial price (that is, an intent to create a price inconsistent with the legitimate forces of supply and demand). Market activity intended to move a commodity's price toward what the actor subjectively believes is the fair value is non-actionable as a matter of law. *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 534 (S.D.N.Y. 2008) ("If a trading pattern is supported by a legitimate economic rationale, it cannot be the basis for liability under the CEA"); *Wilson*, 2018 WL 6322024, at *14–15 (manipulation claim failed even where Defendants intended to raise price because Defendants were offering to buy at economically rational prices below their subjective view of fair value).

It is not sufficient to allege merely that a defendant intended through its market activity to affect price. Rather, manipulative intent requires an intent to create an artificial price. In other words, trading for purposes of moving a price up (or down) to or towards a price that the defendant believed represented fair value is lawful conduct. *See Wilson*, 2018 WL 6322024, at *14–15 (holding there was "no basis in the law" for liability where defendants merely "intended that their bids would affect the settlement price" as plaintiff must prove defendants intended to cause a price that they did not believe reflected fair value); Revised Jury Instructions at 39, *United States v. Smith*, No. 1:19-cr-00669-EEC, Dkt. No. 654 (N.D. Ill. July 27, 2022) (Judge Chang instructing the jury that the manipulative intent element under the CEA requires "intent to create an artificial

8

price" and that "mere intent to affect a price" is not enough); *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 211–12 (3d Cir. 2001) (evidence of trading that may have affected the price of stock did not show defendant "engaged in [the trading] for the purpose of *artificially* depressing the prices" (emphasis added)); *see also Braman v. The CME Grp., Inc.*, 149 F. Supp. 3d 874, 890 (N.D. Ill. 2015) (plaintiff failed to allege "that the defendants intended to cause *artificial* prices" (emphasis added)); *Silver Futures*, 2012 WL 6700236, at *10. Plaintiff's failure to allege that intent is fatal to his manipulation claim.

The Complaint lacks any allegations that Defendants did not genuinely believe that UST was worth $1 during the May 2021 depeg. Plaintiff cannot skirt the intent element with a claim based on an intent to restore UST's peg. *See Wilson*, 2018 WL 6322024, at *14–15. "The mere intent to affect a price is not sufficient, standing alone, to satisfy this intent requirement." Revised Jury Instructions at 39, *Smith*, 1:19-cr-00669-EEC, Dkt. No. 654. Nor is the entirely conclusory allegation that Jump Trading "intended…to send…a false signal to the market," Compl. ¶¶ 51, 111, adequate to allege an intent to cause an artificial price, *see Iqbal*, 556 U.S. at 678.

In fact, taken as a whole, the Complaint itself actually supports the inference that Jump Trading genuinely valued UST at $1—and there is no allegation otherwise. Stablecoins are "digital assets that are designed to maintain a stable value relative to a national currency, a commodity…or other reference assets." CFTC, *10 Digital Asset Terms You Should Know*, https://www.cftc.gov/sites/default/files/2022-09/KeyTerms.pdf. By the very nature of stablecoins, anyone who believes in a particular stablecoin believes that it is worth its peg.[3] Here, Plaintiff's

---

[3] To the extent Plaintiff advances a theory that attempts to twist the mere existence and support of a stablecoin, which is designed to maintain a specific price, into manipulation, that theory has no legal support. While the U.S. regulators, law makers, and administration have called for increased regulation of stablecoins (amongst other cryptocurrencies), none have suggested that stablecoins are inherently manipulative or illegal. *See, e.g.*, Opening Statement of Commissioner Brian Quintenz, CFTC Technology Advisory Committee (Feb. 26, 2020), https://business.cch.com/srd/quintenzstatement022620.pdf

own allegations support the inference that Jump Trading believed in UST, *see, e.g.*, Compl. ¶¶ 41–42 (alleging Jump Trading was an early backer of TFL), 61 (alleging Jump Trading published an article expressing excitement about UST); it certainly follows that Jump Trading believed that UST was worth $1.

If a market participant subjectively believed UST was worth $1, and the allegations support an inference that Jump Trading did, then buying UST for less than $1 would be economically rational and could not send a false price signal to the market about how that market participant valued UST. *See Ploss*, 197 F. Supp. 3d at 1054 ("trading activity [must be] willfully combined with something more to create a false impression of how market participants value a security" in order to state manipulation (internal quotation marks omitted)); *see also Wilson*, 2018 WL 6322024, at *14–15. Indeed, in *Patterson v. Terraform Labs, Pte. Ltd.*, Judge Pitts dismissed a virtually identical manipulation claim against Jump Trading under the securities laws for "fail[ing] to allege facts sufficient to attribute a deceptive purpose to [Jump Trading's] purchases" because the trading "could reflect a benign business decision as opposed to manipulative or deceptive conduct *if Jump truthfully believed it was purchasing the tokens below their real value*." Order Denying Mot. to Compel Arbitration and Granting Mot. to Dismiss at 27, *Patterson v. Terraform Labs, Pte. Ltd.*, 5:22-cv-03600, Dkt. No. 155 (N.D. Cal. Jan. 4, 2024) ("*Patterson* Order") (emphasis added). This entirely legitimate economic rationale precludes manipulative intent under the CEA. *See Wilson*, 2018 WL 6322024, at *20 (quoting *Amaranth*, 587 F. Supp. 2d. at 534); *see also Braman*, 149 F. Supp. 3d at 889–90 (dismissing where only allegations of intent were that

observing that "stablecoins have the potential, through tokenization, to function as viable, liquid mediums of exchange and serve as powerful enablers of smart contracts"); Report on Stablecoins, *President's Working Group on Financial Markets*, U.S. Dep't of the Treasury (Nov. 2021), https://home.treasury.gov/system/files/136/StableCoinReport_Nov1_508.pdf (observing that "[i]f well-designed and appropriately regulated, stablecoins could support faster, more efficient, and more inclusive payments options").

defendants intended to cause legitimate trading); *Twombly*, 550 U.S. at 567–68 (dismissal at pleading stage required when there exists an "obvious alternative explanation" for the purportedly illegal or manipulative conduct).

Plaintiff cannot rely on the allegation that Defendants were incentivized to manipulate because TFL "compensate[d]" Jump Trading for its trading by amending an existing loan agreement. Compl. ¶ 52. Even if this allegation established a motive (as explained in detail below, it does not), this motive would still be insufficient to demonstrate intent where Plaintiff has not alleged any facts suggesting that Jump Trading did not genuinely value UST at $1 in May 2021. Nor can Plaintiff save his failure to allege manipulative intent with the assertion that Jump Trading "conceal[ed]" its trading (which, as discussed below, it had no obligation to disclose). *Id.* ¶ 50; *see Rough Rice*, 2012 WL 473091, at *7 (rejecting claim that "intent to manipulate is reflected in the concealment of their violations" of trading rules where such violations alone were not manipulation). Plaintiff thus fails to adequately allege that Jump Trading intended to cause an artificial price, requiring dismissal of the Complaint.

### c. Plaintiff Does Not Allege that Defendants Had the Ability to Influence the Price of UST and aUST

Finally, Plaintiff offers no allegations, even cursory ones, that Defendants had the ability to influence the price of UST and aUST. This alone prevents his claim. *See Rough Rice*, 2012 WL 473091, at *6–*7 (holding that plaintiff failed to allege ability to manipulate market prices when the only allegation was conclusory).

Nor, in the absence of explicit allegations of such ability, does Plaintiff allege any facts that would support even an inference that Defendants had the ability to influence the price of UST and aUST, such as a dominant market position or control of a high percentage of the market. *See, e.g.*, *Ploss*, 197 F. Supp. 3d at 1061–62 (holding complaint adequately pleaded ability to influence

11

prices by alleging that defendant held 87% of one market and "a dominant position" in another); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 5108131, at *21 (S.D.N.Y. Sept. 20, 2016) (holding complaint adequately pleaded ability to influence prices by alleging control of 90% of a related market). Plaintiff alleges that Jump Trading purchased over 62 million UST over several days, *see* Compl. ¶ 50, but he simultaneously alleges facts revealing that these purchases were approximately a mere three percent of the UST in circulation at the time, far from a dominant position, *see id.* ¶ 47 (alleging a market of 2.1 billion UST tokens in May 2021). Plaintiff thus fails to allege that Defendants had the ability to artificially influence the price of UST and aUST with its purchases, and the conclusory allegation that Jump Trading's trading sent a signal to the marketplace does not change that. *See Rough Rice*, 2012 WL 473091, at *7.

### d. Plaintiff Does Not Allege that Mr. Kariya Was Involved in Any Trading

As against Mr. Kariya, the Complaint's failure to plead a cause of action for commodity manipulation is particularly stark. As noted above, the claim is premised on Jump Trading's alleged purchases of UST in May 2021. But Plaintiff does not allege that Mr. Kariya played any role with respect to Jump Trading's purported trading activities. *See, e.g.*, Compl. ¶¶ 4–6, 48–53, 109–111. In fact, the Complaint nowhere affirmatively asserts—not even in conclusory terms—that Mr. Kariya manipulated the price of UST or aUST. For these additional reasons, Plaintiff's commodity manipulation claim against Mr. Kariya must be dismissed.

\*        \*        \*        \*        \*

Plaintiff's manipulation claim thus fails to adequately allege—under either Rule 9(b) or even under Rule 8(a)—that Defendants manipulated the price of UST and aUST in May 2021. His failure to allege an artificial price, along with intent and the ability to cause an artificial price, requires dismissal of his commodity manipulation claim.

## II.      Plaintiff Does Not Adequately Allege Manipulative Contrivance

Plaintiff's manipulative contrivance claim under CEA Section 6(c)(1) and Regulation 180.1 in Count One likewise contains fatal deficiencies.  He does not identify a single actionable misstatement attributable to Defendants, fails to establish the requisite scienter, and entirely fails to allege that anyone, much less he, relied on the purported misstatements.  Where, as here, a Section 6(c)(1) claim is based on alleged misstatements, *see* Compl. ¶¶ 113–14, Plaintiff must allege a material misrepresentation or omission, reliance, causation, and loss.[4]  *See Ploss*, 197 F. Supp. 3d at 1068.  Plaintiff fails on several of these.

### a.      Plaintiff Does Not Allege Any Actionable Misstatements or Omissions

Plaintiff's allegations of misstatements—like much of his Complaint—focus on statements made by individuals and entities other than Defendants.  Defendants cannot be held liable for these statements, for not preventing someone else from making them, or for not correcting them.  Nor were the smattering of statements in the Complaint that are attributable to Defendants misleading for failing to disclose Jump Trading's May 2021 UST purchases—Defendants had no duty to disclose that trading nor were the identified statements incomplete without that disclosure.  Plaintiff thus fails to allege any misstatement by Defendants.

### i.      Defendants Are Not Liable for Statements Made by Others

Plaintiff pads the paucity of alleged statements by Defendants with a slew of statements by others.  But a defendant cannot be liable for false or misleading statements not "made" by it.  *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  The "maker" of a statement is "the person or entity with ultimate authority over the statement, including its content and whether

---

[4] Courts interpret Section 6(c)(1) similarly to Section 10(b) of the Exchange Act, given their nearly identical text.  *See Kraft Foods*, 153 F. Supp. 3d at 1010.

and how to communicate it." *Id.* The alleged statements by TFL and Mr. Kwon (over whose statements Plaintiff does not allege Defendants had authority) are thus irrelevant. *See* Compl. ¶¶ 55–56, 63, 66–67. This rule is unaffected by Plaintiff's conclusory allegation that Mr. Kariya and Jump "approved" TFL's January 2022 LFG press release, *see id.* ¶ 63, as Plaintiff provides no factual support for how they allegedly approved a statement (whose meaning is in any event unclear) issued by TFL, an entirely separate company.[5] Nor is Plaintiff's allegation that Jump Trading along with other firms funded the LFG and that Mr. Kariya and others were on the LFG's Governing Council, *see id.* ¶ 114(e), sufficient to create liability for the LFG's statements. The Complaint lacks any allegation that Defendants had "ultimate authority" over the LFG's statements as required for a "maker."[6] *See Janus Cap.*, 564 U.S. at 142.

Similarly, there is no duty to correct any alleged misstatements made by others (nor does Plaintiff allege one). *See Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047, 1051–52 (7th Cir. 2012) (rejecting claim that defendant had a duty to correct errors in statements by others as an attempt to "get around *Janus Capital*"); *see also Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *24 (D. Ariz. Feb. 2, 2023) (rejecting allegations that "certain defendants failed to correct or otherwise take action against the false or misleading statements of another," as "such a duty to correct does not exist"); *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2021 WL 4482151, at *6 (S.D.N.Y. Sept. 30, 2021) (allegation that defendant merely "remained silent" in the face of another's false statements "falls short of the inherently deceptive act" required). Plaintiff's manipulative contrivance claim thus cannot be based on statements made by others.

---

[5] Also, this inadequate allegation of approval of one statement in January 2022, even if factually supported (it is not) cannot cast back approval to statements made by TFL and Kwon six months prior.

[6] Nor does the Complaint allege that Defendants controlled either TFL or the LFG.

Finally, and as discussed more below, Defendants had no duty to disclose Jump Trading's May 2021 UST purchases, and the Complaint does not even suggest one. It is well established that "absent a duty to speak," "[m]ere silence about even material information is not fraudulent." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1331 (7th Cir. 1995), *as amended* (Apr. 7, 1995); *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b–5."). And Defendants had no duty to Plaintiff here, "a complete stranger" not even alleged to have transacted with Defendants. *See Chiarella v. United States*, 445 U.S. 222, 232–33 (1980) (finding no duty where there was no relationship between seller and the petitioner, who was "in fact, a complete stranger who dealt with the sellers only through impersonal market transactions"). The "mere possession of non-public market information" does not create a duty to disclose. *Id.* at 235.

### ii. Plaintiff Does Not Adequately Allege that Defendants' Statements Were Misleading

Plaintiff alleges just five statements made by Defendants, which he claims were misleading due to their failure to disclose Jump Trading's May 2021 UST purchases. *See, e.g.*, Compl. ¶¶ 60–61, 65, 68–69. But no additional disclosure was required to make those statements not misleading. That ends the inquiry.

Plaintiff asserts that nondisclosure caused Defendants' affirmative statements to be misleading. But it is facially apparent from these statements that Plaintiff is wrong as matter of law. Affirmative statements need not include all relevant facts, so long as they do not "create an impression of a state of affairs that differs in a material way from the one that actually exists." *SEC v. Ustian*, 229 F. Supp. 3d 739, 765 (N.D. Ill. 2017) (internal quotation marks omitted); *see Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("Often, a statement will not mislead even if it is incomplete or does not include all relevant facts" because "[n]o matter

15

how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."). Plaintiff does not adequately allege how the alleged statements could have created a misleading impression about the 2021 depeg, which was not the subject of any of them. Similarly, rather than create a false impression that the peg was stable, to the extent Defendants' alleged statements touch that issue at all, they show that Defendants were transparent about the possibility of a depeg.

Indeed, the 2021 depeg is completely irrelevant to the majority of the statements that Plaintiff claims were misleading for not disclosing the alleged May 2021 UST purchases, including tweets expressing the enjoyment of working with TFL, *see, e.g.*, *id.* ¶¶ 60, 61, 68, 69, and thus Defendants had no duty to disclose anything about the depeg—much less Jump Trading's alleged trades—in order to make those statements not misleading, *see Stransky*, 51 F.3d at 1334 (holding that two press releases that did not "relate directly to warranty costs" were not misleading for not disclosing rising warranty costs); *Gaines v. Guidant Corp.*, 2004 WL 2538374, at *11 (S.D. Ind. Nov. 8, 2004) (holding that Plaintiffs failed to establish that "news releases about the results of clinical studies or statements of puffery invoke[d] a duty to disclose FDA compliance problems" because none of the statements touched on related topics).

Just three alleged statements are arguably related to the topic of UST as a stablecoin at all, and none reference the May 2021 depeg. *See* Compl. ¶¶ 61, 65, 68. Plaintiff alleges that two Jump Crypto officers "described UST as a 'prominent example' of an algorithmic stablecoin and 'the most elegant solution for creating a highly scalable and more decentralized stablecoin,'" *id.* ¶ 61; Mr. Kariya tweeted his opinion (which is not actionable, *see infra* n.6) that "it was 'difficult to imagine a sustained mass exodus to UST given the circumstances. In the event it occurs, there is potential for UST to be sold/burned and provide some downward pressure on LUNA price,'" *id.*

¶ 65; and on a podcast Mr. Kariya referenced the LFG and highlighted the importance of LUNA liquidity at times where "the UST economy is significantly contracting or expanding," *id.* ¶ 68. Plaintiff does not allege that these statements were themselves false, and they were not rendered misleading by not announcing Jump Trading's alleged purchases of UST during the depeg.[7] Merely referencing UST did not require Defendants to disclose that information. *See Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) ("revealing one fact about a product" does not mean "one must reveal all others that, too, would be interesting"); *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 944–45 (7th Cir. 1989) (finding that "loan documents describing the structure and nature" of a transaction were not required to disclose other alleged facts about the transaction); *Rubinstein v. Gonzalez*, 2016 WL 1213931, at *9 (N.D. Ill. Mar. 29, 2016) (statements that Defendants hoped to realize tax benefits in a merger were not misleading for not disclosing that they may call off the merger if the tax rules changed). For example, that Jump Trading allegedly purchased UST during the May 2021 depeg was extraneous information to the opinion that UST was "the most elegant solution" for a stablecoin. *See* Compl. ¶ 61.

Nor did the candid acknowledgement of the possibility of volatility in UST (that is, a depeg) and the role LUNA liquidity and pricing might play in that, *see id.* ¶¶ 65, 68, require the disclosure of the alleged 2021 trading. These statements were not misleading and would not be misleading whether or not they also referenced the 2021 trading. *See Backman*, 910 F.2d at 16 (holding that disclosures that a product was being sold below cost was not misleading for omitting how much below cost it was sold, the number of sales, or that the sales were below expectations);

---

[7] Notably, Judge Pitts dismissed the securities fraud claim in *Patterson* for failing to state a claim based in part on the statements in Compl. ¶¶ 61, 65. *Patterson* Order at 20–22. As Judge Pitts held, these statements are inactionable opinions, which—as Plaintiff has not adequate alleged they were misleading by omission— precludes liability. *Id.*; *see Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*, 690 F. Supp. 3d 862, 882 (N.D. Ill. 2023).

*Gaines*, 2004 WL 2538374, at *10 (statements about utilization of a device compared to prior methods, physician interest in the device, sales of the device, and long-term effects of the device did not suggest that there were no complications). Indeed, Defendants' statements illustrate that they were forthcoming with the market that price volatility in UST—that is, depegs—could occur and could require external help to restore the peg. *See* The Ship Show, *Kanav Kariya and Do Kwon Talk DeFi* (Mar. 1, 2022), https://terraspaces.org/wp-content/uploads/2023/11/03-01-22-The-Ship-Show-Ep-1-Kariya-Kanav-Do-Kwon-Talk-DeFi.txt. For example, Mr. Kariya stated on the Ship Show (in a portion that Plaintiff chose not to quote) that "it's extremely useful to have a reserve that can step in until the market is able to kind of reconsolidate liquidity around those positions . . . And it's basically meant to take out these extreme spikes and inject liquidity into the book and allow markets to consolidate again around the new prices, when there are extreme price movements, **which do happen** every sometime." *Id.* (emphasis added).[8]

In essence, Plaintiff would require Defendants to announce Jump Trading's UST trading in any statement referencing TFL or UST, regardless of how remotely related. That is not the law. *See Ustian*, 229 F. Supp. 3d at 765; *Brody*, 280 F.3d at 1006. Plaintiff thus fails to allege any material misstatement on which to base his manipulative contrivance claim.

### b. Plaintiff Does Not Allege that Defendants Had the Requisite Intent to Mislead Via their Statements

Plaintiff does not include a single non-conclusory allegation about Defendants' intent in making their statements. "[T]he level of scienter required . . . for manipulation is 'intentionally or

---

[8] The Court may consider Mr. Kariya's statements made during the Ship Show podcast because Plaintiff relies on its contents. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment"). Indeed, Plaintiff's quoted language in paragraph 68 is part of the same response in which this language appears, which Plaintiff conveniently omits with ellipses. *See* Compl. ¶ 68.

recklessly.'" *Kraft Foods*, 153 F. Supp. 3d at 1014; *see Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008). Recklessness requires "an act or omission that 'departs so far from the standards of ordinary care that it is very difficult to believe the actor was not aware of what he or she was doing.'" *Kraft Foods*, 153 F. Supp. 3d at 1014. It requires "allegations of conduct showing an extreme departure from the standards of ordinary care which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* at 1015 (internal quotation marks omitted). Plaintiff fails to meet this standard.

The Complaint merely asserts that Defendants "intentionally or recklessly made material misstatements of fact and misleading omissions concerning their manipulation of the market prices" and "knew or recklessly disregarded that UST and aUST were subject to a material undisclosed risk of collapse in the face of market volatility." Compl. ¶¶ 70, 125. These formulaic allegations do not satisfy the pleading requirements. *See Twombly*, 550 U.S. at 555 (rejecting a mere "formulaic recitation of the elements of [the] cause of action"); *Braman*, 149 F. Supp. 3d at 884 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim (internal quotation marks omitted)).

Plaintiff also cannot manufacture scienter from Defendants' alleged knowledge of the "risk of collapse in the face of market volatility." Compl. ¶ 70. As discussed above, Plaintiff outright alleges that Defendants publicly acknowledged that UST could lose its peg in volatile conditions (i.e., could become unstable). Contrary to showing scienter (or causation, frankly), this

demonstrates that Defendants were candid with the market and does not support an inference that they said one thing but believed another (or were the cause of any loss).[9]

To the extent that Plaintiff attempts to satisfy the scienter requirement with evidence of purported motive, this too fails. Plaintiff claims that Jump Trading was "compensate[d]" for its trading in May 2021 with an amendment of an existing loan agreement with TFL. Compl. ¶ 52. But "simple allegations of financial motive do not necessarily establish scienter." *Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761, 775 (N.D. Ill. 2010); *see Plumbers & Pipefitters Loc. Union v. Zimmer*, 673 F. Supp. 2d 718, 747 (S.D. Ind. 2009) (holding that common motives of financial benefit "are insufficient to establish a strong inference of scienter" (internal quotation marks omitted)). Nor does this allegation establish a motive to make misrepresentations in any event. Plaintiff entirely fails to plead what, if any, benefit Defendants received from the amendment. Plaintiff admits that the amended agreement was an existing loan agreement and that the modification only altered "certain conditions requiring Jump to achieve requisite trading benchmarks," not that the loan price was changed or that Jump Trading would not have been able to meet the existing trading benchmarks and thus still borrow the same tokens at the same price. *See* Compl. ¶ 52. Further, the amendment allegedly occurred and was memorialized months before the first alleged misstatement by Defendants in September 2021. *See id.* ¶¶ 52, 60. A motive to make misstatements does not follow from a purported benefit Jump Trading supposedly already received. Plaintiff thus fails to adequately allege Defendants' intent to make material misrepresentations.

---

[9] Plaintiff's scienter allegations also cannot rest on a claim that Defendants knew they had manipulated the price of UST. *See id.* ¶ 125. Even assuming that Defendants' trading was improper, there is still nothing misleading about the alleged statements (*supra* II.a.2) and the claim does not satisfy the scienter standard.

### c. Plaintiff Does Not Allege that He or Anyone Else Relied on Defendants' Statements

Plaintiff also does not adequately plead that he relied on Defendants' alleged misstatements. Plaintiff alleges no facts that would support an inference that he himself relied on Defendants' statements in making his decisions to buy UST. In fact, he does not even allege that he saw or heard a single statement made by Defendants, a necessary precursor to reliance.

Nor has he adequately alleged reliance under the fraud-on-the-market theory. To establish a presumption of reliance through fraud-on-the-market, Plaintiffs must plead that (1) "the alleged misrepresentations were publicly known," (2) "the stock traded in an efficient market," and (3) "the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811 (2011) (internal quotation marks omitted). The Complaint lacks any allegations that the market for UST was efficient. Nor does Plaintiff include any of the common allegations of efficient markets, including: (1) "a secondary market with a relatively high level of trading activity and for which trading information such as price and volume were readily available;" (2) a large average trading volume during the time period at issue; (3) significant analyst coverage of the market; (4) the existence of market makers; and (5) "empirical evidence that new information is quickly reflected in the price of a share of the stock." *See In re Northfield Lab'ys, Inc. Sec. Litig.*, 267 F.R.D. 536, 546 (N.D. Ill. 2010); *Greenberg v. Boettcher & Co.*, 755 F. Supp. 776, 782 (N.D. Ill. 1991). There are simply no allegations, much less allegations rising to the level of particularity required by Rule 9(b), that Plaintiff or anyone relied on Defendants' alleged misstatements.

Thus, Plaintiff's failure to allege actionable misstatements or omissions, Defendants' fraudulent or manipulative intent, or any theory of reliance on Defendants' alleged misstatements requires dismissal of his manipulative contrivance claim on multiple independent grounds.

21

### III. Plaintiff Does Not Adequately Allege that Defendants Aided and Abetted TFL's CEA Violation

Having failed to establish any independent wrongdoing by Defendants, Plaintiff seeks to hold Defendants liable for non-party TFL's alleged CEA violations. But Plaintiff's allegations fail to state an aiding and abetting claim.[10]

*First*, Plaintiff does not allege facts sufficient to establish that Defendants knew of TFL's purported intent to violate the CEA. Aiding and abetting liability only reaches those who "actively participate[] in a criminal scheme knowing its extent and character." *Rosemond v. United States*, 572 U.S. 65, 77 (2014). "Allegations of negligence simply do not satisfy the scienter requirement of an aiding and abetting claim under the CEA," *Damato*, 153 F.3d at 473 n.12, nor do allegations of recklessness, *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 189–90 (3d Cir. 2000) (rejecting allegations that "alleged, at most, that the [defendants] acted recklessly"); *Burdick v. Rosenthal Collins Grp., LLC*, 2012 WL 13026752, at *5 (N.D. Ohio July 26, 2012) (rejecting allegations based on primary violator's "extraordinarily risky" trading practices as "at most, [allegations] that the Defendants acted recklessly" (internal quotation marks omitted)). Plaintiff's haphazard allegations fall far short of the actual knowledge required. *Damato*, 153 F.3d at 472–73.

Plaintiff fails to allege that Defendants knew that *TFL*—a separate entity—intended to violate the CEA. The Complaint contains no allegation that anyone at TFL told Defendants that it intended to manipulate the price of UST and aUST. Indeed, the sole allegation of Defendants' alleged knowledge asserts only that Defendants knew of their own actions. *See* Compl. ¶ 129 (alleging that Defendants had "actual and superior knowledge of their efforts to manipulate the

---

[10] To plead aiding and abetting under the CEA, Plaintiff must allege that Defendants "(1) had knowledge of [TFL's] . . . intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective." *Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir. 1998). As the Seventh Circuit has noted, these elements are the same as those required for 18 U.S.C. § 2. *Id.*

prices of UST and aUST"). But even were this conclusory allegation somehow inclusive of TFL's intent to violate the CEA, these threadbare recitations would remain inadequate. *See Wilber v. Bank of Am., N.A.*, 2015 WL 4040635, at *5 (C.D. Cal. June 29, 2015) (rejecting conclusory allegations of actual knowledge).

Defendants' knowledge of TFL's intent also cannot be inferred from either Jump Trading's alleged UST purchases in May 2021 or TFL's subsequent purported misstatements. As discussed above, Plaintiff does not allege that Defendants did not believe UST was worth $1 in May 2021. Nor does Plaintiff even allege that *TFL* did not believe UST was worth $1 in May 2021 or—critically—that Defendants somehow knew of that belief by TFL. Furthermore, Plaintiff's allegation of TFL's agreement to modify the conditions of the parties' existing loan agreement "[t]o compensate Jump" is inadequate to claim that Defendants knew of any intent by TFL to violate the CEA. Compl. ¶ 52. Modifying the conditions of an existing agreement is hardly inherently improper, particularly when in conjunction with otherwise legitimate trading, and does not plausibly support an inference that Defendants knew of TFL's alleged illicit intent.

Plaintiff similarly fails to allege that Defendants had any knowledge of TFL's purpose or intent in making the alleged misstatements following the May 2021 depeg. At most, if Plaintiff's allegations are taken as true (which Defendants contest), all Plaintiff alleges is that Defendants knew that TFL did not disclose Jump Trading's trading in May 2021. But these bare facts do not support a conclusion that Defendants actually knew that TFL intended to violate the CEA.[11] Plaintiff thus has not adequately alleged Defendants' knowledge of TFL's claimed manipulation.

---

[11] TFL and Mr. Kwon's alleged misstatements all post-dated the beginning of Jump Trading's May 2021 trading and therefore are irrelevant to Defendants' knowledge at the time of trading. *See, e.g.*, Compl. ¶¶ 55–59, 62–64, 66–67.

*See Braman*, 149 F. Supp. 3d at 891 (dismissing aiding and abetting claim where plaintiff failed to allege knowledge of the primary violation).

*Second*, Plaintiff fails to establish that Defendants intended to further TFL's purported violations. "[A] person aids and abets a crime when…he intends to facilitate *that offense's* commission." *Rosemond*, 572 U.S. at 76 (emphasis added). "[T]he state of mind required for the statutory offense must be shown for conviction as an aider and abettor." *United States v. Beck*, 615 F.2d 441, 449 (7th Cir. 1980) (interpreting 18 U.S.C. § 2). As explained above, Plaintiff does not adequately allege that Defendants intended to manipulate the price of UST or aUST or to make materially misleading statements. Plaintiff's failure to adequately allege that Defendants had "full knowledge" of TFL's alleged CEA violations also dooms this claim. *Rosemond*, 572. U.S. at 77 ("We have previously found that intent requirement satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense."). Defendants cannot have intended to aid in the commission of an offense they did not know was occurring. Thus, Plaintiff has not adequately alleged the requisite intent for aiding and abetting.

*Third*, the Complaint does not allege that Defendants took any action in furtherance of TFL's purported violations of the CEA. This element "is not so capacious as to encompass any act taken in relation to some identified criminal activity." *United States v. Delgado*, 972 F.3d 63, 75 (2d Cir. 2020), *as amended* (Sept. 1, 2020). Instead, this element requires allegations "that the defendant *furthered* the criminal act." *Id.* (internal quotation marks omitted).

When distilled, Plaintiff's aiding and abetting claim seeks to hold Defendants liable for not correcting TFL's alleged misstatements. But that is not a viable theory of liability; an act in furtherance must be an affirmative act, not "omissions or passive inaction." *Rough Rice*, 2012 WL 473091, at *8 (internal quotation marks omitted); *see Wilber*, 2015 WL 4040635, at *5 (rejecting

24

allegations that "essentially concern actions they appear to believe Defendant *should* have taken"). Plaintiff thus cannot claim a failure to correct TFL's alleged misstatements or to disclose Jump Trading's May 2021 UST purchases as a basis for his aiding and abetting claim.

This leaves Plaintiff grasping to base liability on trading and statements that he has not adequately alleged were misconduct. *See Weber v. E.D.&F. Man Int'l, Inc.*, 1999 WL 35326, at *3 (N.D. Ill. Jan. 13, 1999) (finding that statements that were not false were not an act in furtherance of a violation). Plaintiff cannot claim that legitimate trading and statements that were not misleading, made without any knowledge of TFL's intent (and none is alleged), were in furtherance of an alleged CEA violation by TFL. Proximity to TFL is not sufficient to transform these actions into wrongdoing. *See* 7th Cir. Pattern Crim. Jury Instrs. 5.07 (instructing that a defendant's association with a primary violator alone is not sufficient to allege participation in the violation). Thus, Plaintiff's aiding and abetting claim must be dismissed.

## IV. Plaintiff's Inability to Allege CEA Claims Precludes His Unjust Enrichment Claim

Because Plaintiff fails to state a claim against Jump Trading under the CEA, his unjust enrichment claim also fails. Where, as here, "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then . . . unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (internal quotation marks omitted). Thus, Plaintiff's unjust enrichment claim must be dismissed alongside his commodities claims. *See Braman*, 149 F. Supp. 3d at 896–97 (dismissing unjust enrichment claim based on dismissal of statutory claims).

## CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

Dated:    July 22, 2024                        Respectfully submitted,

                                               KOBRE & KIM LLP

                                               /s/ Jonathan D. Cogan
                                               Jonathan D. Cogan
                                               Steven W. Perlstein (admitted *pro hac vice*)
                                               800 Third Avenue
                                               New York, NY 10022
                                               Telephone: (212) 488-1200
                                               jonathan.cogan@kobrekim.com
                                               steven.perlstein@kobrekim.com

                                               Erika L. Berman (admitted *pro hac vice*)
                                               1919 M Street, NW
                                               Washington, DC 20036
                                               Telephone: (202) 664-1900
                                               erika.berman@kobrekim.com

                                               Olivia St. Clair Long (Bar No. 6301704)
                                               O. LONG LAW LLC
                                               820 Davis St., Suite 452
                                               Evanston, IL 60201
                                               Telephone: (847) 556-8846
                                               olivia@olonglaw.com

                                               *Attorneys for Defendant Jump Trading, LLC*

                                               ZUCKERMAN SPAEDER LLP

                                               /s/ R. Miles Clark
                                               Aitan Goelman (*pro hac vice* forthcoming)
                                               R. Miles Clark (admitted *pro hac vice*)
                                               1800 M Street, NW, Suite 1000
                                               Washington, DC 20036
                                               Telephone: (212) 778-1800
                                               agoelman@zuckerman.com
                                               mclark@zuckerman.com

                                               Michael Frisch (Bar No. 6296533)
                                               CROKE FAIRCHILD DUARTE & BERES
                                               180 N. LaSalle St., Suite 3400
                                               Chicago, IL 60601
                                               Telephone: (847) 530-7419
                                               mfrisch@crokefairchild.com

                                               *Attorneys for Defendant Kanav Kariya*