UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TAEWOO KIM, *et al.*,

               Plaintiffs,

      v.

JUMP TRADING, LLC, *et al.*

             Defendants.

No. 1:23-cv-02921

Hon. Georgia N. Alexakis

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION**

# <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ..........................................................................................................3

STANDARD OF REVIEW ..............................................................................................4

ARGUMENT ...............................................................................................................5

I. Defendants' Motion Fatally Relies on Inadmissible Evidence.................................5

II. The Court, Not an Arbitrator, Must Decide Whether Non-Signatories Like Defendants May Seek to Enforce an Arbitration Agreement ..................................7

  A. The Seventh Circuit Is Clear That The Court Must Decide This Issue ..................7

  B. Whether Other Circuits Apply a Different Rule Is Irrelevant to This Case...........11

III. Defendants Cannot Compel Arbitration Through Equitable Estoppel ............................12

  A. State Contract Law Supplies the Equitable Estoppel Test.....................................13

  B. Illinois Law Governs and Defeats the Motion ......................................................17

  C. Even if Federal Law Governed, the Motion Still Fails ..........................................19

IV. Plaintiffs' Claims Are Beyond the Scope of the Anchor TOS ..........................................22

V. The Court Should Not Stay Any Non-Arbitrable Claims ..................................................26

CONCLUSION...........................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Credit One Bank, N.A.*,
   885 F.3d 1054 (7th Cir. 2018) ..........................................................................13

*Ahern v. Bd. of Educ. of City of Chi.*,
   133 F.3d 975 (7th Cir. 1998) .............................................................................8

*Al-Nahhas v. Rosebud Lending LZO*,
   2023 WL 5509320 (N.D. Ill. Aug. 25, 2023) ....................................................8

*Ali v. Vehi-Ship, LLC*,
   2017 WL 5890876 (N.D. Ill. Nov. 27, 2017) ..................................................10

*Apollo Comput., Inc. v. Berg*,
   886 F.2d 469 (1st Cir. 1989) ............................................................................11

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009) ...........................................................................13, 16, 20

*Bauwens v. Revcon Tech. Grp., Inc.*,
   935 F.3d 534 (7th Cir. 2019) ...........................................................................19

*Berg-Mfg. & Sales Corp. v. Ivy/Mar Co.*,
   1996 WL 596512 (N.D. Ill. Oct. 15, 1996) .......................................................6

*Black v. TIC Inv. Corp.*,
   900 F.2d 112 (7th Cir. 1990) ...........................................................................19

*Blanton v. Domino's Pizza Franchising LLC*,
   962 F.3d 842 (6th Cir. 2020) ...........................................................................11

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1988) .........................................................................................15

*Burnett v. Nat'l Ass'n of Realtors*,
   75 F.4th 975 (8th Cir. 2023),
   *cert. denied sub nom. HomeServices of Am., Inc. v. Burnett*,
   144 S. Ct. 1347 (2024) ..............................................................................12, 23

*Cannon v. Armstrong Containers Inc.*,
   92 F.4th 688 (7th Cir. 2024) ...........................................................................17

*Casa Arena Blanca LLC v. Rainwater by Est. of Green*,
   2022 WL 839800 (10th Cir. Mar. 22, 2022) ...................................................11

*CCC Intelligent Sols. Inc. v. Tractable Inc.*,
2019 WL 2011092 (N.D. Ill. May 7, 2019) ...........................................8, 13

*CCC Intelligent Sols. Inc. v. Tractable Inc.*,
36 F.4th 721 (7th Cir. 2022) ...................................................................8, 9

*Cehovic-Dixneuf v. Wong*,
895 F.3d 927 (7th Cir. 2018) ........................................................................5

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
500 F.3d 571 (7th Cir. 2007) ................................................................14, 16

*Cherry Commc'ns, Inc. v. Coastal Tel. Co.*,
906 F. Supp. 452 (N.D. Ill. 1995) ................................................................6

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023)....................................................................................27

*Coinbase, Inc. v. Suski*,
144 S. Ct. 1186 (2024)................................................................................10

*Contec Corp. v. Remote Sol. Co.*,
398 F.3d 205 (2d Cir. 2005).........................................................................11

*Coons v. Yum! Brands, Inc.*,
672 F. Supp. 3d 626 (S.D. Ill. 2023) ............................................................9

*Doe v. Trump Corp.*,
6 F.4th 400 (2d Cir. 2021) ..........................................................................11

*Dore & Assocs. Contracting, Inc. v.
Int'l Union of Operating Eng's, Loc. Union No. 150*,
2017 WL 3581159 (N.D. Ill. Aug. 18, 2017) .............................................17

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
756 F.3d 1098 (8th Cir. 2014) .....................................................................11

*Falcon v. City of Chicago*,
2018 WL 3853988 (N.D. Ill. Aug. 13, 2018) .............................................11

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)...............................................................................10, 14

*Fitzpatrick v. City of Fort Wayne*,
259 F.R.D. 357 (N.D. Ind. 2009) ..................................................................3

*Flynn v. FCA US LLC*,
2016 WL 5341199 (S.D. Ill. Sept. 23, 2016).............................................27

*Ford v. Wilson,*
90 F.3d 245 (7th Cir. 1996) ..................................................................3

*French v. Wachovia Bank,*
574 F.3d 830 (7th Cir. 2009) ..............................................................3

*GE Energy Power Conversion France SAS, Corp. v.*
*Outokumpu Stainless USA, LLC,*
590 U.S. 432 (2020)..........................................................13, 15, 20

*GEA Grp. AG v. Flex-N-Gate Corp.,*
740 F.3d 411 (7th Cir. 2014) ............................................................26

*Gilroy v. Seabourn Cruise Line, Ltd.,*
2012 WL 1202343 (W.D. Wash. Apr. 10, 2012).......................................14

*Giron v. Subaru of Am., Inc.,*
2022 WL 17130869 (N.D. Ill. Nov. 21, 2022) ........................................8

*Gonzalez v. Rodriguez,*
2023 WL 8004288 (N.D. Ill. Nov. 17, 2023) ........................................27

*Grabowski v. PlatePass, L.L.C.,*
2021 WL 1962379 (N.D. Ill. May 17, 2021) ..........................................9

*Henri De Villamont USA v. Hawaiian Liquor Distrib., Inc.,*
1987 WL 9021 (N.D. Ill. Mar. 27, 1987)................................................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
586 U.S. 63 (2019)..........................................................................9, 10

*Henry v. Vantage Credit Union,*
2021 WL 2187908 (E.D. Mo. May 28, 2021) ........................................12

*Hoffman v. Deloitte & Touche, LLP,*
143 F. Supp. 2d 995 (N.D. Ill. 2001) ..........................................16, 21

*Holden v. Deloitte & Touche LLP,*
390 F. Supp. 2d 752 (N.D. Ill. 2005) ..........................................16, 21

*Holmes v. Diza Tacos Streeterville, LLC,*
2023 WL 1777463 (N.D. Ill. Feb. 6, 2023) ..........................................10

*Hopkins v. Dell Techs., Inc.,*
2023 WL 3791722 (S.D. Ill. June 2, 2023)............................................10

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002)......................................................................10, 11

iv

*Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*,
  659 F.2d 836 (7th Cir. 1981) ................................................................19, 20, 22

*Jacobsen Gravel Co. v. IronPlanet, Inc.*,
  2016 WL 10879837 (D. Minn. Nov. 10, 2016) ...........................................12

*Kashkeesh v. Microsoft Corp.*,
  679 F. Supp. 3d 731 (N.D. Ill. 2023) ...........................................................8

*Kass v. PayPal Inc.*,
  75 F.4th 693 (7th Cir. 2023) ....................................................................4, 5

*Klay v. All Defendants*,
  389 F.3d 1191 (11th Cir. 2004) .................................................................26

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ...................................................................12

*Kuznik v. Hooters of Am., LLC*,
  2020 WL 5983879 (C.D. Ill. Oct. 8, 2020) ................................................10

*Leff v. Deutsche Bank AG*,
  2009 WL 1380819 (N.D. Ill. May 14, 2009) ..................................16, 21, 22

*In re Liberty Refund Anticipation Loan Litig.*,
  2014 WL 3639189 (N.D. Ill. July 23, 2014)...........................................22, 23

*Liu v. Wu*,
  2024 WL 516960 (S.D. Fla. Jan. 5, 2024) ..................................................21

*Manor v. Copart Inc.*,
  2017 WL 4785924 (N.D. Ill. Oct. 24, 2017)...............................................11

*McGowan v. Camp Agawak, Ltd.*,
  2020 WL 5848441 (N.D. Ill. Oct. 1, 2020)................................................17

*Meyer Intell. Properties Ltd. v. Bodum, Inc.*,
  597 F. Supp. 2d 790 (N.D. Ill. 2009),
  *rev'd on other grounds*, 690 F.3d 1354 (Fed. Cir. 2012)..............................6

*Moore v. Motor Coach Indus., Inc.*,
  487 F. Supp. 2d 1003 (N.D. Ill. 2007) ......................................................17

*Moorman v. Charter Commc'ns, Inc.*,
  2019 WL 1930116 (W.D. Wis. May 1, 2019) .............................................10

*MS Dealer Service Corp. v. Franklin*,
  177 F.3d 942 (11th Cir.1999) ....................................................................22

*Newman v. Plains All Am. Pipeline, L.P.*,
　　23 F.4th 393 (5th Cir. 2022) ........................................................................12

*Nomanbhoy v. Vahanvaty*,
　　2011 WL 6736052 (N.D. Ill. Dec. 21, 2011) ...................................................14, 15

*O'Connor v. Ford Motor Co.*,
　　2023 WL 130522 (N.D. Ill. Jan. 9, 2023) ...........................................................8

*Outokumpu Stainless USA, LLC v. Coverteam SAS*,
　　2022 WL 2643936 (11th Cir. July 8, 2022) .....................................................15, 16

*Pagan v. Integrity Sol. Servs., Inc.*,
　　42 F. Supp. 3d 932 (E.D. Wis. 2014) ..............................................................21

*Patterson v. Jump Trading LLC*,
　　710 F. Supp. 3d 692 (N.D. Cal. 2024) .....................................................20, 21, 25

*Reidt v. Advanced Mktg. & Processing, Inc.*,
　　2023 WL 8469772 (W.D. Wis. Dec. 7, 2023) ......................................................9

*Robertson v. Enbridge (U.S.) Inc.*,
　　2020 WL 9211171 (W.D. Pa. Aug. 4, 2020) ......................................................12

*Rogers v. Tug Hill Operating, LLC*,
　　76 F.4th 279 (4th Cir. 2023),
　　*cert. denied*, 144 S. Ct. 818 (2024) ...............................................................12

*Scheurer v. Fromm Fam. Foods LLC*,
　　863 F.3d 748 (7th Cir. 2017) ..................................................................13, 16, 20

*Setty v. Shrinivas Sugandhalaya LLP*,
　　3 F.4th 1166 (9th Cir. 2021) .................................................................15, 20, 24

*Signature Retail Servs., Inc. v. Darnell*,
　　2013 WL 535569 (N.D. Ill. Feb. 12, 2013) .........................................................6

*Simpson v. Franciscan All., Inc.*,
　　827 F.3d 656 (7th Cir. 2016) .....................................................................6

*Sosa v. Onfido, Inc.*,
　　8 F.4th 631 (7th Cir. 2021) ............................................................. *passim*

*Stillman v. City of Terre Haute*,
　　2019 WL 415618 (S.D. Ind. Feb. 1, 2019) ........................................................11

*Teamsters Loc. Union No. 705 v. L. Neill Cartage Co. Inc.*,
　　2021 WL 4477888 (N.D. Ill. Sept. 30, 2021) ......................................................9

vi

*The Republic of Iraq v. BNP Paribas USA*,
    472 F. App'x 11 (2d Cir. 2012) ............................................................14

*Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*,
    601 F.3d 329 (5th Cir. 2010) ..............................................................16

*U.S. Commodity Futures Trading Comm'n v. AlphaMetrix, LLC*,
    2016 WL 11945531 (N.D. Ill. Feb. 29, 2016) ........................................17

*United States v. Ernst Jacob*,
    2023 WL 6294254 (D.P.R. Sept. 26, 2023) ...........................................16

*Universal F. of Cultures Barcelona 2004, S.L., in liquidation v.
    Council for a Parliament of the World's Religions*,
    2013 WL 1196607 (N.D. Ill. Mar. 21, 2013) .........................................14

*Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*,
    474 F.3d 966 (7th Cir. 2007) ..............................................................26

*Wallrich v. Samsung Elecs. Am., Inc.*,
    106 F.4th 609 (7th Cir. 2024) ...............................................................4

*Warciak v. Subway Restaurants, Inc.*,
    880 F.3d 870 (7th Cir. 2018) .........................................................13, 14

*Weber-Stephen Prod. LLC v. Sears Holding Corp.*,
    145 F. Supp. 3d 793 (N.D. Ill. 2015) .....................................................6

*Wilborn v. Kraft Foods Grp., Inc.*,
    71 F. Supp. 3d 927 (W.D. Wis. 2014) ....................................................6

*Woodard v. SmartMatch Ins. Agency, LLC*,
    2024 WL 4252803 (N.D. Ill. Sept. 20, 2024) ......................................8, 25

## Statutes and Rules

Fed. R. Civ. P. 56 ...........................................................................................5

Fed. R. Evid. 602 ...........................................................................................5

## PRELIMINARY STATEMENT

This case concerns Defendants' unlawful price manipulation of the crypto-asset UST, which Plaintiffs and other members of the proposed Class purchased in the United States.[1] No Plaintiff had any contractual relationship with any Defendant. Nonetheless, Defendants—who are not parties to any arbitration agreement—seek to derail, or at the very least further stall, this case by sending Plaintiffs' claims to arbitration in Singapore because *some* UST tokens were deposited on the Anchor Protocol and its terms of service (the "Anchor TOS") contain an arbitration provision. But the only counterparty to the Anchor TOS was Terraform Labs PTE, Ltd. ("TFL"), which is not affiliated with Defendants. Because Defendants' arguments are wrong on the law and have already been rejected by the only other federal court to consider them, Defendants' motion should be denied.

Defendants' motion fails at the starting gate because Defendants do not offer any admissible evidence that any Plaintiff ever agreed to an arbitration clause. Defendants' only supporting evidence is a declaration from former TFL officer Arrash Chris Amani (the "Amani Declaration") that was filed on behalf of TFL in a separate case and includes a copy of a version of the Anchor TOS containing an arbitration clause. Although the Amani Declaration makes representations about how the Anchor TOS was presented to users "[a]t all relevant times," it fails to specify what such times were. Moreover, Amani did not join TFL until June 2022, one month *after* the end of the Class Period in this case. Amani therefore necessarily lacks personal knowledge of any relevant facts concerning whether any Plaintiff agreed to be bound by the arbitration clause in the Anchor TOS. Defendants also have not shown they could offer any statement from the

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Amended Complaint, Dkt. 60 (Aug. 9, 2024).

Amani Declaration at trial. The Amani Declaration therefore cannot support Defendants' motion. Without it, the entire basis for their motion crumbles.

Even if the Amani Declaration were admissible (and it is not), Defendants are wrong at every step. *First*, Defendants overlook controlling Seventh Circuit caselaw requiring a judge, not an arbitrator, to determine whether non-signatories like Defendants may enforce an arbitration provision. Defendants' effort to manufacture a circuit split on the issue is irrelevant because this Court is bound by the Seventh Circuit's rulings.

*Second*, Defendants ignore Supreme Court and Seventh Circuit caselaw expressly requiring lower courts to apply state (here, Illinois), not federal, principles of contract formation to determine whether a non-signatory can enforce an arbitration agreement through equitable estoppel. Defendants' effort to shoehorn this case into the jurisdiction of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") fails because all parties to this case, and all transactions giving rise to Plaintiffs' claims, are domestic. Under Illinois law, which governs this issue, Defendants may not invoke equitable estoppel because Plaintiffs did not make any representations to induce Defendants' reasonable reliance on the arbitration provision of the Anchor TOS. Nor can Defendants demonstrate equitable estoppel under federal law (which is not applicable, in any event) because they do not contend that Plaintiffs' claims depend on the Anchor TOS and have not shown a close enough relationship between Defendants and TFL to permit them to enforce the agreement.

*Third*, Plaintiffs' claims are plainly beyond the scope of the Anchor TOS because they arise from Defendants' violations of federal and state law, not any dispute between Plaintiffs and TFL, which in any event is not a party to this action.

For any one of these reasons, the Court should deny Defendants' motion in full. If the Court were to determine that Plaintiffs' claims relating to UST deposited on the Anchor Protocol are arbitrable, it should sever those claims and permit the plainly non-arbitrable portion of this suit (concerning UST not deposited on the Anchor Protocol) to proceed in federal court.

## **BACKGROUND**[2]

Defendants are U.S.-based companies and individuals who manipulated the market price of UST tokens during the Class Period, from May 23, 2021 through May 25, 2022, giving rise to liability for commodity price manipulation and manipulative contrivance, aiding and abetting commodity price manipulation and manipulative contrivance, and unjust enrichment. *See* Am. Compl. ¶¶ 1, 16–19, 73–118. All Plaintiffs are U.S. residents who purchased UST in the United States during the Class Period and were damaged by Defendants' misconduct. *See id.* ¶¶ 1, 12–15, 119–27, 133. Plaintiffs had no direct interactions with any Defendants and did not enter any contracts with any Defendant. *Id.* ¶ 128. Some of the UST tokens purchased by Plaintiffs were held in wallets unconnected to the Anchor Protocol. *See id.* ¶ 129. Other UST tokens held by Plaintiffs were loaned to the Anchor Protocol during the Class Period, with title to those tokens remaining with Plaintiffs at all times. *Id.* ¶ 130. Plaintiffs' claims are based on the devaluation of

---

[2] These facts are drawn from the allegations in the Amended Complaint, which have been verified by Plaintiffs. *See* Goldstein Decl. Exs. A–D (Plaintiffs' verifications); *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996) (verified allegations constitute evidentiary facts). Defendants' reliance on now-superseded allegations from Plaintiff Taewoo Kim's initial complaint (prior to being joined as a plaintiff in this action by Plaintiffs Kashyap Patel, Kerry Woolley, and Ken Worsham) is improper under controlling Seventh Circuit precedent. *See, e.g.*, *French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009) ("[W]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward." (quoting *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir.1999)). In any event, even if allegations in Plaintiff Kim's initial complaint were admissible against him in this action, his now-superseded allegations are not admissible against Plaintiffs Patel, Woolley, or Worsham. *See, e.g.*, *Fitzpatrick v. City of Fort Wayne*, 259 F.R.D. 357, 365–66 (N.D. Ind. 2009) (limiting admissibility of evidence against non-declarant).

their UST, both those held in wallets unconnected to the Anchor Protocol, as well as UST over which the Plaintiffs retained title but that they had loaned to the Anchor Protocol. *Id.* ¶ 131. *None of Plaintiffs' damages relate to the failure of the Anchor Protocol. Id.*[3] Defendants' arguments in favor of arbitration relate solely to UST loaned on the Anchor Protocol, but do *not* apply to the UST held by each Plaintiff that was not deposited on the Anchor Protocol. *See* Am. Compl. ¶ 129 (detailing non-Anchor holdings by each Plaintiff and for the Class).

## STANDARD OF REVIEW

"To compel arbitration, a party must show (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023) (citation omitted). "While the FAA does not provide the evidentiary standard applicable for determining whether to compel arbitration," the Seventh Circuit has "analogized the standard needed to that required at summary judgment." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 618 (7th Cir. 2024). "A district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if no genuine dispute of material fact exists as to the formation of the agreement." *Id.* "The party seeking to compel arbitration bears the initial burden to show that an arbitration agreement exists." *Id.* "[I]f the party opposing arbitration identifies a genuine dispute of material fact regarding whether the parties agreed to arbitrate in the first place, there must be a trial on that issue." *Kass*, 75 F.4th at 700 (citing 9 U.S.C. § 4). A court must "view the evidence and draw all reasonable inferences in favor of the party opposing arbitration." *Id.*

---

[3] Defendants accuse Plaintiffs of attempting to "sidestep" the arbitration provisions in the Anchor TOS by naming only Defendants, and not TFL or its former CEO as defendants here. *E.g.*, Mot. 1. That is simply untrue. Plaintiffs sued *in this District* Defendants located *in this District*, from whom collection of a judgment should not present a problem. This is a sound and appropriate approach to litigation.

## ARGUMENT

### I.     Defendants' Motion Fatally Relies on Inadmissible Evidence

Defendants' only factual basis for claiming that Plaintiffs are bound by the arbitration clause in the Anchor TOS is the Amani Declaration. However, because any statements contained in the Amani Declaration concerning use of the Anchor Protocol during the Class Period were not made based on personal knowledge, and because Defendants have not shown that they could offer such statements through Amani at trial, they may not be considered here.

Under the summary judgment standard, which applies to Defendants' motion, *see* Mot. 5 n.6, "affidavits or declarations 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018) (quoting Fed. R. Civ. P. 56(c)(4)). "[E]ither side may object that the other's evidence 'cannot be presented in a form that would be admissible in evidence.'" *Id.* (citing Fed. R. Civ. P. 56(c)(2)). Here, the Motion is entirely premised on the Amani Declaration, which was filed by non-party TFL in support of *its own* motion to compel arbitration in another case. *See* Mot. 5 & n.6. The Amani Declaration is inadmissible here for two reasons.

*First*, the Amani Declaration was not made on personal knowledge as to any facts relevant to Plaintiffs' claims, as required under Federal Rule of Civil Procedure 56(c)(4) and Federal Rule of Evidence 602. Although the Amani Declaration states that Amani is "personally familiar with the process that prospective Anchor Protocol users use to connect their digital wallets to the Anchor Protocol," Amani Decl. ¶ 1, and purports to *describe* how the process operated "[a]t all relevant times," *id.* ¶ 2, he neither specifies the relevant time period nor provides any basis for his purported personal knowledge about the Anchor Protocol before he first joined TFL in June 2022 (which was one month *after* the end of the Class Period), *see* Goldstein Decl. Ex. E ¶ 1 ("Prior to

joining TFL in June 2022, I was Senior Vice President of Product, M&A, & Partnerships at TimeClockPlus, LLC.").[4] Because Defendants have not provided any evidence to establish Amani's personal knowledge concerning use of the Anchor Protocol and acceptance of the Anchor TOS during the Class Period by Plaintiffs, Defendants may not rely on Amani's assertions to support their motion. *See Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) (holding that the mere assertion of personal knowledge is insufficient without foundation for such knowledge); *Wilborn v. Kraft Foods Grp., Inc.*, 71 F. Supp. 3d 927, 934 (W.D. Wis. 2014) (disregarding declaration of union steward about facts pre-dating his tenure); *Signature Retail Servs., Inc. v. Darnell*, 2013 WL 535569, at *3 (N.D. Ill. Feb. 12, 2013) (disregarding declaration of corporate officer about facts pre-dating his tenure); *Meyer Intell. Properties Ltd. v. Bodum, Inc.*, 597 F. Supp. 2d 790, 796–97 (N.D. Ill. 2009) (same), *rev'd on other grounds*, 690 F.3d 1354 (Fed. Cir. 2012); *Henri De Villamont USA v. Hawaiian Liquor Distrib., Inc.*, 1987 WL 9021, at *4 n.1 (N.D. Ill. Mar. 27, 1987) (same).[5] For this reason alone, the Amani Declaration cannot support the core premise of Defendants' motion: that Plaintiffs are somehow bound by the arbitration clause in the Anchor TOS.

---

[4] Exhibit E to the Goldstein Declaration is Amani's sworn declaration, dated January 30, 2024, in support of TFL's Chapter 11 bankruptcy petition, *In re Terraform Labs Pt. Ltd.*, No. 24–10070 (Bankr. D. Del.). To the extent the Court considers the Amani Declaration, it may also consider Amani's other sworn declaration, in the bankruptcy action.

[5] *See also Weber-Stephen Prod. LLC v. Sears Holding Corp.*, 145 F. Supp. 3d 793, 804 (N.D. Ill. 2015) (disregarding declaration of defendant company's chief marketing officer concerning customer calls, for failure to establish personal knowledge of such calls); *Cherry Commc'ns, Inc. v. Coastal Tel. Co.*, 906 F. Supp. 452, 454–55 (N.D. Ill. 1995) (disregarding affidavit of the plaintiff company's president because it "appear[ed] to be based on information from others, not on personal knowledge"); *Berg-Mfg. & Sales Corp. v. Ivy/Mar Co.*, 1996 WL 596512, at *5 (N.D. Ill. Oct. 15, 1996) (similar).

*Second*, Defendants cannot show that Amani, who executed his declaration in Morocco, would testify for them at trial in this District. When Amani joined TFL in June 2022, TFL was in the midst of the fallout from the complete collapse of UST and the entire Terra ecosystem just weeks earlier. *See* Am. Compl. ¶¶ 7, 107; Goldstein Decl. Ex. E ¶ 1. TFL's former CEO, Do Kwon, has since been charged with criminal fraud in the United States and South Korea, and he has not yet been extradited to the United States. *See* Am. Compl. ¶¶ 10, 112, 117. In addition, Kwon and TFL have both been found liable for civil fraud following a federal jury trial, in connection with which multiple witnesses, including Defendants DiSomma and Kariya, *refused* to testify after invoking their Fifth Amendment privilege against self-incrimination. *See id.* ¶¶ 9, 113–15. Under such circumstances, it is not reasonable to infer that Amani would testify at trial in this District as to the facts asserted in the Amani Declaration, even if they were relevant to the Class Period (which they are not).

For either one of these reasons, the Amani Declaration should be disregarded, and Defendants' motion should be denied for lack of any admissible evidence of an arbitration agreement with Plaintiffs.

## II. The Court, Not an Arbitrator, Must Decide Whether Non-Signatories Like Defendants May Seek to Enforce an Arbitration Agreement

If the Court does reach the merits, the Court itself must resolve the threshold question of arbitrability.

### A. The Seventh Circuit Is Clear That The Court Must Decide This Issue

In arguing that an arbitrator must determine whether non-signatories may enforce an arbitration agreement, *see* Mot. 12–18, Defendants ignore binding precedent. Because "[a]rbitration is contractual," and "a judge must decide whether the parties have agreed to arbitrate," a non-signatory's right to enforce an arbitration agreement must be decided by a judge,

not an arbitrator. *CCC Intelligent Sols. Inc. v. Tractable Inc.*, 36 F.4th 721, 723 (7th Cir. 2022), *aff'g* 2019 WL 2011092 (N.D. Ill. May 7, 2019). Defendants contend that "there appears to be no Seventh Circuit case squarely deciding whether a nonsignatory's enforcement of an arbitration provision is a gateway question for the arbitrators if a delegation clause exists," Mot. 15. But Defendants inexplicably ignore *CCC Intelligent Solutions*, which is directly on point. There, as here, the non-signatory defendant sought to compel the plaintiff to arbitrate its claims pursuant to an "arbitration clause [that] delegate[d] the issues of existence and validity to the arbitrator." 2019 WL 2011092, at *2. The district court determined that "the delegation clause [could not] be enforced against plaintiff unless plaintiff agreed to arbitrate disputes with [defendant]," and it was "for the court to decide" the issue. *Id.* The Seventh Circuit affirmed. 36 F.4th at 723–24.

Following *CCC*, it is no longer "open to debate" that "whether a third party may enforce an arbitration provision is a question for the court, not an arbitrator." *Giron v. Subaru of Am., Inc.*, 2022 WL 17130869, at *4 (N.D. Ill. Nov. 21, 2022). Thus, "[r]egardless of the somewhat muddled state of federal law" in other circuits, district courts in *this* circuit are undeniably "bound by *CCC*" to "conclude[] that the issue of whether [a defendant] has any right as a non-signatory to compel arbitration with [a plaintiff] goes to contract formation and must be decided by the Court." *O'Connor v. Ford Motor Co.*, 2023 WL 130522, at *6 (N.D. Ill. Jan. 9, 2023); *accord Al-Nahhas v. Rosebud Lending LZO*, 2023 WL 5509320, at *8 (N.D. Ill. Aug. 25, 2023); *Kashkeesh v. Microsoft Corp.*, 679 F. Supp. 3d 731, 735 n.3 (N.D. Ill. 2023) (collecting cases).[6]

---

[6] *See also Woodard v. SmartMatch Ins. Agency, LLC*, 2024 WL 4252803, at *1 (N.D. Ill. Sept. 20, 2024) (Alexakis, J.) (holding, where plaintiff denied entering into arbitration agreement, that "it is this Court, not the arbitrator, that determines whether the parties actually formed a contract to arbitrate"); *id.* at *3 (permitting magistrate judge to "oversee limited discovery on whether defendant can enforce any agreement to arbitrate as a non-signatory to the agreement"). Defendants' reliance on *Ahern v. Bd. of Educ. of City of Chi.*, 133 F.3d 975 (7th Cir. 1998), is misplaced given that *Ahern* was decided "outside the arbitration context." Mot. 18.

The few in-circuit cases relied upon by Defendants for the contrary proposition—that the issue of non-signatory enforcement of an arbitration provision may be delegated to an arbitrator—either pre-date *CCC*'s conclusive resolution of the issue, *see Grabowski v. PlatePass, L.L.C.*, 2021 WL 1962379 (N.D. Ill. May 17, 2021) (cited Mot. 14); *Teamsters Loc. Union No. 705 v. L. Neill Cartage Co. Inc.*, 2021 WL 4477888 (N.D. Ill. Sept. 30, 2021) (cited Mot. 14),[7] or are inapposite. In *Reidt v. Advanced Mktg. & Processing, Inc.*, 2023 WL 8469772 (W.D. Wis. Dec. 7, 2023) (cited Mot. 11), the district court refused to compel arbitration because the plaintiff disputed ever using the website whose terms of service included the arbitration agreement, so the court's further statements about whether an arbitrator must decide the non-signatory defendant's ability to enforce the agreement were dicta (and wrong under *CCC*). *See id.* at *2–3. In *Coons v. Yum! Brands, Inc.*, 672 F. Supp. 3d 626 (S.D. Ill. 2023) (cited Mot. 14), the district court stated that it was "defer[ing] all issues of arbitrability, including the ability of a non-signatory to enforce the agreement, to the arbitrator," but the *court itself* then proceeded to hold that the non-signatory defendant could enforce the arbitration agreement under an agency/alter-ego theory. *Id.* at 635–36. *Coons* thus supports Plaintiffs' argument that the Court must decide the threshold issue of arbitrability.

Defendants also argue, relying on *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019), that a broad delegation clause deprives courts of the power to decide threshold arbitrability issues. *See* Mot. 9–13. But the existence of an arbitration agreement between the parties in *Henry Schein* was undisputed—the issue there was who must decide whether the claims

---

[7] *Teamsters* is also inapposite because it concerned whether an arbitration panel exceeded its authority in directing its remedies against not only the defendant, a signatory to the arbitration agreement, but also the defendant's non-signatory *affiliate*. 2021 WL 4477888, at *6. No such issues are presented in this case.

fell within the scope of the arbitration provision. 586 U.S. at 66.[8] The Supreme Court explained that "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue," but the Court cautioned that "before referring a dispute to an arbitrator, *the court* determines whether a valid arbitration agreement exists." *Id.* at 69 (emphasis added). Because the issue here is whether a valid arbitration agreement exists at all between Plaintiffs and Defendants, *Henry Schein* neither requires nor permits an arbitrator to decide arbitrability under these circumstances.[9]

Defendants' reliance on *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (cited Mot. 14–15, 17), is similarly misplaced because the parties in *Howsam* were both signatories to the arbitration agreement, and the Supreme Court reaffirmed that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Id.* at 81–82, 84 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 946 (1995)).[10] Defendants argue that, by citing *First Options*, *Howsam*, "suggested that questions about the rights of a nonsignatory to an arbitration contract" should also be decided by an arbitrator. Mot. 15. But *Howsam* actually cited *First Options* for the opposite proposition: "that a court should

---

[8] *See also, e.g.*, *Holmes v. Diza Tacos Streeterville, LLC*, 2023 WL 1777463, at *2 (N.D. Ill. Feb. 6, 2023) (cited Mot. 9–10) (both parties signed arbitration agreement); *Kuznik v. Hooters of Am., LLC*, 2020 WL 5983879, at *1 (C.D. Ill. Oct. 8, 2020) (cited Mot. 11) (same); *Hopkins v. Dell Techs., Inc.*, 2023 WL 3791722, at *6 (S.D. Ill. June 2, 2023) (cited Mot. 11) (same); *Moorman v. Charter Commc'ns, Inc.*, 2019 WL 1930116, at *3 (W.D. Wis. May 1, 2019) (cited Mot. 11) (same); *Ali v. Vehi-Ship, LLC*, 2017 WL 5890876, at *1 (N.D. Ill. Nov. 27, 2017) (cited Mot. 13) (same).

[9] Accordingly, Defendants' contention that "*Coinbase, Inc. v. Suski*, 144 S. Ct. 1186 (2024), has not altered *Henry Schein*'s rule," Mot. 10 n.10, does not help them. Both decisions confirm that "the court determines whether a valid arbitration agreement exists." *Suski*, 144 S. Ct. at 1193 (quoting *Henry Schein*, 586 U.S. at 69).

[10] *Howsam*'s holding that the interpretation of a limitations period under the governing arbitration rules was presumptively delegated to the arbitrator, 537 U.S. at 86, has no relevance here.

decide whether the arbitration contract bound parties who did not sign the agreement," *Howsam*, 537 U.S. at 84; *accord Manor v. Copart Inc.*, 2017 WL 4785924, at *2 (N.D. Ill. Oct. 24, 2017).

### B.    Whether Other Circuits Apply a Different Rule Is Irrelevant to This Case

Because Seventh Circuit law is settled, decisions from other circuits are irrelevant. *E.g.*, *Falcon v. City of Chicago*, 2018 WL 3853988, at *2 (N.D. Ill. Aug. 13, 2018) ("The fact that other circuits have issued rulings contrary to the Seventh Circuit's holding in [a case] does not make this issue contestable."); *Stillman v. City of Terre Haute*, 2019 WL 415618, at *8 (S.D. Ind. Feb. 1, 2019) ("[T]he existence of a contrary holding by a district court in another circuit does not relieve this Court of its obligation to apply precedent as it has been established by the Seventh Circuit.").

Regardless, the First, Second, Sixth, Eighth, and Tenth Circuit cases cited by Defendants (at Mot. 15–16) are inapposite because the non-signatories in those cases, unlike Defendants here, had close legal relationships with the signatory. *See Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 470 (1st Cir. 1989) (signatory's bankruptcy trustee assigned claims to non-signatory); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 207 (2d Cir. 2005) (non-signatory was "surviving entity" of signatory following merger); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 843–44 (6th Cir. 2020) (non-signatory franchisor controlled aspects of signatory franchisees' businesses); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1099 (8th Cir. 2014) (signatory transferred to non-signatory premises subject to construction contract containing arbitration clause); *Casa Arena Blanca LLC v. Rainwater by Est. of Green*, 2022 WL 839800, at *1 (10th Cir. Mar. 22, 2022) (non-signatory was estate of signatory decedent). Defendants do not even argue that TFL and Jump had such a relationship.

Defendants ignore decisions from at least two of those circuits involving circumstances more analogous to those here that run counter to their arguments. *See, e.g.*, *Doe v. Trump Corp.*, 6 F.4th 400, 413–14 (2d Cir. 2021) (reaffirming that, where "the nonsignatory is alleged to be a

11

third-party wrongdoer … the arbitration contract in no way extends to the non-signatory" (cleaned up)); *Burnett v. Nat'l Ass'n of Realtors*, 75 F.4th 975, 983–84 (8th Cir. 2023) (holding that a court must decide a non-signatory's right to arbitrate where contract terms applied narrowly only to parties), *cert. denied sub nom. HomeServices of Am., Inc. v. Burnett*, 144 S. Ct. 1347 (2024).[11] Defendants further concede that the Fourth, Fifth, and Ninth Circuits require *courts* to make the threshold arbitrability decision as to non-signatories. *E.g., Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 288 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 818 (2024); *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013).[12] The clear weight of authority in these other circuits, even if they were somehow relevant here in light of contrary binding Seventh Circuit precedent (which they are not), counsels that this Court must decide arbitrability here.

### III. Defendants Cannot Compel Arbitration Through Equitable Estoppel

Defendants seek to enforce the arbitration provision of the Anchor TOS under a theory of equitable estoppel based on federal common law. Mot. 21–24. They cannot.

---

[11] Defendants cite the since-denied petition for certiorari in *Burnett* without identifying it as contrary authority from the Eighth Circuit. *See* Mot. 16 n.12.

[12] That Defendants are challenging *Kramer* in a "pending appeal" is immaterial to this case. Mot. 19 n.14. In a long footnote, Defendants cite "[n]umerous" decisions from district courts in other circuits, Mot. 16–17 n.13, none of which is persuasive. Those emanating from the First, Sixth, and Tenth Circuits are inapposite because, as noted above, those circuits apply a different rule than the majority of others. The remaining cases—from district courts in the Third and Eighth Circuits—are factually inapposite. *See Jacobsen Gravel Co. v. IronPlanet, Inc.*, 2016 WL 10879837, at *1–4 (D. Minn. Nov. 10, 2016) (signatory plaintiff sued both signatory and non-signatory for breach of contract in same sale); *Robertson v. Enbridge (U.S.) Inc.*, 2020 WL 9211171, at *4 (W.D. Pa. Aug. 4, 2020) ("Plaintiff may only recover against [non-signatory] if he can show that it acted as the [p]laintiff's 'joint employer' under the FLSA for [signatory's] alleged failure to pay overtime."); *Henry v. Vantage Credit Union*, 2021 WL 2187908, at *2 (E.D. Mo. May 28, 2021) (plaintiff signed a separate contract assigning rights of signatory to non-signatory defendant).

## A.    State Contract Law Supplies the Equitable Estoppel Test

The Supreme Court has squarely and repeatedly held that "traditional principles of state law," including equitable estoppel, govern whether a non-party may enforce an arbitration agreement. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 437–38 (2020) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). And the Seventh Circuit has repeatedly noted that the Supreme Court's decision in *Arthur Andersen* modified "prior decisions applying federal common law, rather than state contract law," to decide whether non-signatories may enforce arbitration agreements through equitable estoppel. *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 754–55 (7th Cir. 2017) (quoting *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261–62 (5th Cir. 2014)); *see also A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1064 n.14 (7th Cir. 2018) (noting *Scheurer* "clarified" that "state contract law" governs "whether a party is equitably estopped from denying the application of an arbitration clause"); *Warciak v. Subway Restaurants, Inc.*, 880 F.3d 870, 872 (7th Cir. 2018) (same); *CCC*, 2019 WL 2011092, at *4. Accordingly, in this circuit, "[a] nonparty's right to enforce an arbitration agreement is governed by state law." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). Defendants ignore this binding precedent.[13]

Defendants' sole basis for arguing that federal common law should apply is their assumption that, "because TFL, as signatory to the contract, is not a citizen of the United States," this dispute falls under the New York Convention. Mot. 21. But determining whether the New York Convention applies to any dispute requires applying *state* contract law. That is because "an agreement in writing to arbitrate" is a fundamental prerequisite to applying the New York

---

[13] Defendants ignore the core holdings of *Arthur Andersen* and *Sosa*, and they cite both cases only in passing and for different propositions. *See* Mot. 17, 22; *infra* note 21.

Convention, and the existence of such an agreement "is determined under state contract law." *Universal F. of Cultures Barcelona 2004, S.L., in liquidation v. Council for a Parliament of the World's Religions*, 2013 WL 1196607, at *3 (N.D. Ill. Mar. 21, 2013) (citing *First Options*, 514 U.S. at 944, and *Howsam*, 537 U.S. at 84); *see also The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 13–14 (2d Cir. 2012) (applying state law to hold that non-signatory foreign state lacked right to compel arbitration under the New York Convention). This rule is consistent with the Seventh Circuit's repeated admonition that "'traditional principles of state law' govern whether a contract, including an arbitration agreement, is enforceable by or against a non-party." *Warciak*, 880 F.3d at 872 (quoting *Scheurer*, 863 F.3d at 752 (quoting *Arthur Andersen*, 556 U.S. at 631)).

Moreover, the New York Convention is limited "to *disputes* involving a foreign party, or, if only disputes involving exclusively United States citizens are involved, to circumstances in which *the dispute* has a 'reasonable relation with one or more foreign states.'" *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 500 F.3d 571, 577 (7th Cir. 2007) (quoting 9 U.S.C. § 202) (emphasis added). The mere "selection of a foreign arbitration forum and foreign governing law, taken alone, does not create a reasonable relation with a foreign state." *Nomanbhoy v. Vahanvaty*, 2011 WL 6736052, at *4 (N.D. Ill. Dec. 21, 2011) (collecting cases).[14] For the New York Convention to apply, the "legal relationship" between the parties to the purported agreement sought to be enforced must relate to international commerce. *Id.* at *5. Here, Defendants are all U.S. residents and seek to enforce an arbitration agreement against Plaintiffs, who are also all U.S. residents. *See* Am. Compl. ¶¶ 12–19. Moreover, all relevant purchases occurred in the United

---

[14] *Accord Gilroy v. Seabourn Cruise Line, Ltd.*, 2012 WL 1202343, at *2 (W.D. Wash. Apr. 10, 2012) ("The true question is whether 'there is a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself'" (quoting *Ensco Offshore Co. v. Titan Marine L.L.C.,* 370 F.Supp.2d 594, 597 (S.D. Tex. 2005))).

States, *id.* ¶¶ 1, 120, 122, 124, 126, 133, as did Defendants' alleged misconduct, *id.* ¶¶ 94, 96–99, 102, 105, 111, 155. Because any legal relationship between Plaintiffs and Defendants is "completely domestic," the New York Convention does not apply. *Nomanbhoy*, 2011 WL 6736052, at *5.

Defendants insist that the New York Convention must apply here because TFL is a foreign company, Mot. 21 & n.15, but they do not cite any case finding the New York Convention applicable where domestic non-signatory defendants seek to compel arbitration against domestic plaintiffs in connection with claims arising out of domestic transactions. The four cases cited by Defendants for their New York Convention argument are all inapposite. *See* Mot. 21–22. *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166 (9th Cir. 2021), involved "an Indian company's motion to compel another Indian company and its Indian owner to arbitration based on an agreement entered into in India, signed by two Indian brothers (who own[ed] the Indian companies), and governing conduct in India and the United States." *Id.* at 1169 (Bea, J., dissenting).[15] *Outokumpu Stainless USA, LLC v. Coverteam SAS*, 2022 WL 2643936, at *6 (11th Cir. July 8, 2022), was "an international commercial dispute between the subsidiary of a Finnish conglomerate, which was previously the subsidiary of a German conglomerate, concerning allegedly defective motors manufactured in France by a French corporation for the subsidiary's steel plant in Alabama." Brief of Appellee at 3, No. 17-10944, 2017 WL 2875129 (11th Cir. June 30, 2017).[16] *Boyle v. United*

___

[15] To the extent that the Ninth Circuit's holding in *Setty*—that federal common law governs the equitable estoppel analysis for non-signatories in cases under the New York Convention, 3 F.4th at 1168—applies in purely domestic cases like this one, it conflicts with the law of this circuit. In any event, *Setty* ultimately affirmed the denial of the non-signatory's motion to compel because the claims in the federal action were not "intertwined with the contract providing for arbitration." *Id.* (citation omitted).

[16] Defendants cite only a non-precedential concurring opinion in the Eleventh Circuit's *Outokumpu* decision. *See* Mot. 21. The majority did not reach the issue of equitable estoppel because it found

*Techs. Corp.*, 487 U.S. 500 (1988), did not concern arbitration or the New York Convention at all—it was a wrongful-death action and turned on issues of federal preemption. *See id.* at 502–04.

Defendants' passing reliance on the Seventh Circuit's decision in *Certain Underwriters*, Mot. 22, is misplaced because foreign entities were *parties* to that litigation, the dispute was "concededly arbitrable," and the issue presented on appeal was the choice of law to govern "[t]he interpretation of the portion of the arbitration clause related to the appointment of arbitrators," *Certain Underwriters*, 500 F.3d at 572, 578. Unlike in *Certain Underwriters*, the instant dispute— where all parties to the litigation are U.S. residents and the key conduct occurred domestically— presents no good reason to depart from the "fundamental principle" that state law governs the equitable estoppel test as to non-signatories. *Sosa*, 8 F.4th at 637.

Moreover, *Certain Underwriters* does not discuss *Arthur Andersen* or equitable estoppel, and it pre-dates the Seventh Circuit's subsequent decisions in *Scheurer* and other cases discussed above specifically holding that state law rather than federal law governs whether a non-signatory may enforce an arbitration agreement. Defendants' reliance on district court cases pre-dating *Scheurer* fails for the same reasons. *See Leff v. Deutsche Bank AG*, 2009 WL 1380819 (N.D. Ill. May 14, 2009) (cited Mot. 22); *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752 (N.D. Ill. 2005) (cited Mot. 23); *Hoffman v. Deloitte & Touche*, LLP, 143 F. Supp. 2d 995, 1005 (N.D. Ill. 2001) (cited Mot. 23). Decisions from other courts confirm that a non-signatory's ability to enforce even an arbitration agreement that falls under the New York Convention depends on applicable *state* law. *E.g.*, *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 333–

---

that the arbitration agreement expressly covered the non-signatory. *Outokumpu*, 2022 WL 2643936, at *3.

34 & nn.10–11 (5th Cir. 2010) (collecting cases); *United States v. Ernst Jacob*, 2023 WL 6294254, at *8 (D.P.R. Sept. 26, 2023) (applying Puerto Rico law).

### B.     Illinois Law Governs and Defeats the Motion

Determining which substantive law governs a dispute depends on the source of a federal court's jurisdiction—in federal-question cases, courts apply the choice-of-law rules under federal common law; when sitting in diversity or exercising supplemental jurisdiction over state claims, courts apply the forum state's choice-of-law rules. *U.S. Commodity Futures Trading Comm'n v. AlphaMetrix, LLC*, 2016 WL 11945531, at *3 (N.D. Ill. Feb. 29, 2016). This case arises under all three sources of subject-matter jurisdiction. *See* Am. Compl. ¶¶ 20–23. "Both the federal common law and the Illinois choice of law rules are the same: the Restatement (Second) of Conflict of Laws' rule of the most-significant-relationship." *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1008 (N.D. Ill. 2007); *accord Dore & Assocs. Contracting, Inc. v. Int'l Union of Operating Eng's, Loc. Union No. 150*, 2017 WL 3581159, at *12 (N.D. Ill. Aug. 18, 2017).

Illinois has the most significant relationship with this dispute. As the Court's order denying Defendants' transfer motion made clear, "Defendants' location in Illinois" gives the state "a stronger interest in resolving this case" than any other forum identified by Defendants. Dkt. 48, at 14–15; *compare McGowan v. Camp Agawak, Ltd.*, 2020 WL 5848441, at *5 (N.D. Ill. Oct. 1, 2020) (applying Wisconsin law based on same reasoning supporting transfer). This ruling is law of the case, and Defendants offer no "good reason" for its reconsideration. *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 701 (7th Cir. 2024) ("The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." (citation omitted)). Accordingly, Illinois law governs the equitable estoppel analysis.

Under Illinois law, "[a] claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements

or conduct of the first person." *Sosa*, 8 F.4th at 641 (quoting *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 541 (Ill. App. Ct. 2004)). "The party bringing an equitable estoppel claim 'must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable.'" *Id.* (quoting *Ervin*, 812 N.E.2d at 541). "The party claiming [equitable] estoppel has the burden of proving it by clear and convincing evidence." *Id.* (quoting *In re Scarlett Z.-D.*, 28 N.E.3d 776, 785 (Ill. 2015)).

Like this case, *Sosa* involved a non-signatory defendant that sought to compel arbitration based on terms of use that the plaintiff purportedly accepted when using a third-party web-based application. *Id.* at 634. Applying the Illinois standard of equitable estoppel, the Seventh Circuit held that the non-signatory "identified no representation that [the plaintiff] made to [the defendant] under the Terms of Service, or otherwise, to induce [the defendant] to rely on the contract's arbitration provision." *Id.* at 641. Instead, "the representations in the Terms of Service concerning [the plaintiff's] use of the [relevant feature of the web-based app] were directed at [the application's operator]—not [the defendant]." *Id.* "Further, [the defendant] failed to present any evidence of its detrimental reliance on any such representation as required by Illinois law. And, in any event, its failure to argue detrimental reliance until its reply brief before the district court rendered that argument waived." *Id.*[17] Although the non-signatory defendant in *Sosa*, like Defendants here, argued for the application of a "concerted misconduct" theory of equitable estoppel based on a purported "federal common law standard," the Seventh Circuit rejected that argument as inconsistent with Illinois law. *Id.* at 641–42.

_____

[17] Likewise, Defendants have clearly waived any argument of detrimental reliance here, as they did not assert it in their motion. *See id.*; Mot. 21–24.

*Sosa* is on all fours with this case and compels denial of Defendants' motion. As in *Sosa*, Defendants have not identified any statements made by any Plaintiff to induce any Defendant to rely on the arbitration provisions of the Anchor TOS. *Id.* at 641. Any statements in the Anchor TOS that are attributable to Plaintiffs were made to TFL, not to any Defendant. *Id.* Nor have Defendants presented any evidence that they relied to their detriment on any such representations, as would be required to invoke equitable estoppel under Illinois law. *Id.* Defendants' failure to offer any evidence or make any arguments concerning the standard for equitable estoppel under Illinois law constitutes a clear waiver of the issue. *Id.* And Defendants' insistence on applying a "concerted misconduct" theory of equitable estoppel is inconsistent with Illinois law, as the Seventh Circuit made clear in *Sosa*. *Id.* at 641–42.

### C. Even if Federal Law Governed, the Motion Still Fails

Even under the federal common law rule governing equitable estoppel (which does not apply), the Motion fails. Defendants contend that "[e]quitable estoppel applies under federal law in either of two scenarios: (1) when the claims rely on the terms of the contract or (2) when the claims arise out of allegations of interdependent and concerted misconduct between a signatory and a nonsignatory." Mot. 22. But the Seventh Circuit has approved of only the first scenario, which Defendants do not advance, and Defendants' arguments as to the second scenario fail.

The Seventh Circuit "appl[ies] equitable estoppel principles narrowly." *Bauwens v. Revcon Tech. Grp., Inc.*, 935 F.3d 534, 538 (7th Cir. 2019). Generally, "[a]n estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir. 1990). Accordingly, where a plaintiff who is a signatory to a contract containing a valid arbitration clause asserts claims against a non-signatory that are "fundamentally grounded" in the rights and obligations arising under the contract, equitable estoppel may apply to permit the non-signatory to

19

compel arbitration. *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 838–39 n.4 (7th Cir. 1981) (citing other federal cases).[18] Even assuming that "the *Hughes Masonry* reasoning survives *Arthur Andersen*, it does not apply here" because Plaintiffs' claims arise under federal statutes and state common law and "do not depend" on the Anchor TOS or any other contract. *Scheurer*, 863 F.3d at 754.

This conclusion is further supported by the district court's denial of Jump's nearly identical motion to compel arbitration in *Patterson v. Jump Trading LLC*, 710 F. Supp. 3d 692 (N.D. Cal. 2024), which advances securities law claims and which Defendants describe as "based on the same exact facts that are at issue here." Dkt. 28, at 2; *see also* Dkt. 35, at 1 (stating Defendants' view that both cases assert "claims arising out of the exact same set of facts"); Dkt. 46, at 7 (stating Defendants' view that "this case is virtually identical to *Patterson*"). In *Patterson*, the district court held that Jump had failed to satisfy the test for equitable estoppel under federal common law.[19] *Patterson*, 710 F. Supp. 3d at 709. The court explained that "federal law permits third parties to enforce arbitration agreements only where the claims at issue are intertwined with the contract in which the arbitration agreement appears," and that the claims in *Patterson* neither depended on nor were intertwined with the terms of the Anchor TOS. *Id.* Instead, as here, the claims arose "from

---

[18] The rule applied in *Hughes Masonry* is consistent with the Supreme Court's observation that, "in the arbitration context, equitable estoppel allows a non-signatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 38 (2020) (cleaned up).

[19] The district court in *Patterson* found the New York Convention applicable under a broad reading of the Ninth Circuit's decision in *Setty*. *See Patterson*, 710 F. Supp. 3d at 708. As discussed *supra* Part III.A and note 15, such a reading conflicts with the law of the Seventh Circuit. In any event, Defendants do not rely on *Patterson* (in which the California district court *denied* the same motion Defendants advance here) for their argument about the New York Convention, and they describe the opinion as "erroneous." Mot. 24 n.16.

Jump's alleged conduct and statements surrounding the May 2021 repeg of UST." *Id.* at 709–10.[20] The same denial of arbitration is warranted here.

Defendants' argument for a second theory of equitable estoppel, based on "concerted misconduct" between a non-signatory and signatory to the arbitration agreement, relies entirely on dicta and inapposite caselaw. *See* Mot. 22–23. Defendants cite *Sosa* for this purported alternative "federal standard" without mentioning that *Sosa* rejected it and analyzed equitable estoppel under Illinois law.[21] 8 F.4th at 641. Defendants also cite three cases from this district, *see* Mot. 23, but all three cases imported the "concerted misconduct" theory from the Eleventh Circuit. *See Leff*, 2009 WL 1380819, at *5 n.3 (citing *MS Dealer Service Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999), and *Becker v. Davis,* 491 F.3d 1292, 1303 (11th Cir.2007)). Even if the theory "rest[ed] on solid footing" in this circuit, and it does not, *Pagan v. Integrity Sol. Servs., Inc.*, 42 F. Supp. 3d 932, 936 (E.D. Wis. 2014), it does not apply here for two independent reasons.

*First*, the "concerted misconduct" theory does not apply where, as here, the "interdependent" signatory is not also a party to the action. *E.g.*, *Liu v. Wu*, 2024 WL 516960, at *5 (S.D. Fla. Jan. 5, 2024). *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752 (N.D. Ill. 2005) (cited Mot. 23), and *Hoffman v. Deloitte & Touche*, LLP, 143 F. Supp. 2d 995 (N.D. Ill. 2001) (cited Mot. 23), both involved claims by signatory plaintiffs against non-signatory *and* signatory

---

[20] Defendants argue that the decision in *Patterson* was "erroneous" because it held that Defendants' proposed "concerted misconduct" theory was not recognized in the Ninth Circuit. Mot. 24 n.16. Defendants' appeal in *Patterson* is still pending, and the Ninth Circuit will resolve that issue. Regardless, the theory is inapplicable here, as explained in this section.

[21] Defendants' omission is especially troubling in light of their misleading assertion, in a footnote, that *Sosa* somehow "recognized expressly" that federal common law includes the "concerted misconduct" standard. Mot. 24 n.16. *Sosa* merely quoted a district-court case raised by the defendant as articulating "*a* federal common law standard," which the Seventh Circuit rejected as inconsistent with the governing *state* law. 8 F.4th at 641–42 (emphasis added).

defendants. *See Holden*, 390 F. Supp. 2d at 765; *Hoffman*, 143 F. Supp. 2d at 1005. Although *Leff* did not involve any signatory defendants, the opinion's reasoning is not persuasive given that it mistakenly conflates the Eleventh Circuit's "interdependent and concerted misconduct" standard from *MS Dealer* with the Seventh Circuit's requirement in *Hughes Masonry* that claims be "'intimately founded in and intertwined with' the underlying contract obligations." *Leff*, 2009 WL 1380819, at *5 n.3. Here, TFL (the only other signatory) is not a party to this action, so Defendants cannot invoke the "concerted misconduct" theory of equitable estoppel.

*Second*, in any event, it is not enough that a non-signatory defendant allegedly coordinated with a signatory and facilitated transactions giving rise to arbitrable claims against the signatory. *In re Liberty Refund Anticipation Loan Litig.*, 2014 WL 3639189, at *6 (N.D. Ill. July 23, 2014). In *Liberty*, the plaintiffs brought claims against the defendant tax-preparation company for facilitating loans from third-party banks in violation of state consumer protection laws. *Id.* at *1. The defendant moved to compel arbitration of the claims based on the different arbitration clauses contained in the loan agreements that the plaintiffs made with the third-party banks, to which the defendant was a non-signatory. *Id.* Although the district court granted the motion with respect to the two arbitration agreements that expressly named the defendant as a covered party, *id.* at *2–3, the court held that the defendant could not enforce the third arbitration provision through equitable estoppel, *id.* at *7. The court reasoned that the claims arose under state statutes that were separate from the loan agreement. *Id.* at *6. The same is true here: Plaintiffs' claims arise under federal statutory and state common law, and not under the Anchor TOS.

## IV. Plaintiffs' Claims Are Beyond the Scope of the Anchor TOS

Although the Court need not reach the question of scope—because Defendants' only supporting evidence is inadmissible, *supra* Part I, and Defendants cannot establish equitable estoppel under state or federal law, *supra* Part III—Plaintiffs' claims are nonetheless beyond the

limited scope of the arbitration clause of the Anchor TOS. As a preliminary matter, the version of the Anchor TOS submitted by Defendants is dated October 12, 2021, and Defendants have not submitted any admissible evidence concerning earlier versions, *see supra* Part I, so purchases made between May 23 and October 11, 2021, are plainly outside its scope.[22]

The "Dispute Resolution" provisions of the Anchor TOS also plainly apply only to claims against *TFL*:

> *We* will use our best efforts to resolve any potential disputes through informal, good faith negotiations. If a potential dispute arises, *you* must contact *us* by sending an email to legal@anchorprotocol.com so that *we* can attempt to resolve it without resorting to formal dispute resolution. If *we* aren't able to reach an informal resolution within sixty days of your email, then *you and we both* agree to resolve the potential dispute according to the process set forth below.
>
> Any claim or controversy arising out of or relating to the Interface, this Agreement, including any question regarding this Agreement's existence, validity or termination, or any other acts or omissions for which *you* may contend that *we* are liable, including (but not limited to) any claim or controversy as to arbitrability ("Dispute"), shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC Rules").

Amani Decl. Ex. A § 18 (emphases added). The Anchor TOS define "we," "our," and "us" as TFL and define "Interface" as TFL's web-based app that provides access to the "decentralized" Anchor Protocol. *Id.* at 1. At most, this language covers only disputes between users and *TFL* relating to the Anchor Protocol Interface or the Anchor TOS. *E.g.*, *Burnett*, 75 F.4th at 984 ("This clause demonstrates the narrow, party-specific scope of the Arbitration Agreements." (cleaned up)).[23]

---

[22] The Class Period is May 23, 2021 to May 25, 2022. Am. Compl. ¶ 1.

[23] This limited scope is confirmed by the "Release of Claims" provision, which provides that users "assume all risks in connection with [their] access and use of the Interface and [their] interaction with the Protocol." Amani Decl. Ex. A § 15.

The Anchor TOS do not contain any language making them applicable to third parties like Defendants, especially not for claims arising from *purchases* of UST. Indeed, the Anchor TOS expressly state that "THE INTERFACE IS NOT A BROKER OR INTERMEDIARY," Amani Decl. Ex. A, at 1, and disclaim any "warranties as to the markets on which digital assets are transferred, purchased, or traded," *id.* § 14. The Anchor TOS further disclaim TFL's "control over any transactions over the [*Anchor*] *Protocol*, the method of payment of any transactions or any actual payments of transactions," *id.* § 1 (emphasis added), as well as TFL's "liability or responsibility for any … illegal conduct of any third party," *id.* § 17.

Nor do Plaintiffs' claims relate to the Anchor TOS or Anchor Protocol. Plaintiffs' claims arise from their "purchases of UST during the Class Period." Am. Compl. ¶ 119. Plaintiffs "seek class certification on behalf of all persons who, during the Class Period, purchased UST in the United States and were damaged thereby." *Id.* ¶ 133. Plaintiffs make clear that they "seek recovery only as to the decrease in value of their UST holdings" and, as Defendants acknowledge (Mot. 27), "do not seek to recover from Defendants[] any decrease in the value of aUST or any expected returns from lending UST through the Anchor Protocol." Am. Compl. ¶ 131. Accordingly, Plaintiffs' claims do not relate to the Anchor TOS or Anchor Protocol Interface. *See, e.g.*, *Setty*, 3 F.4th at 1169 (holding that dispute over partnership's ownership of trademarks based on prior use did not fall within scope of partnership agreement's arbitration provision).

Irrelevantly, Defendants purport to dispute whether "Plaintiffs maintained title to the underlying UST deposits," Mot. 28 (citing Am. Compl. ¶ 130), but Defendants' own proffered evidence *supports* that Plaintiffs maintained title to any UST loaned to Anchor, *see* Amani Decl. at 1 ("THE OWNER/OPERATOR OF THE INTERFACE DOES NOT HAVE CUSTODY OVER YOUR ASSETS"); *id.* § 14 ("We do not store, send, or receive digital assets or funds."); *id.* § 23

("[W]e do not have custody of or access to users' digital assets or funds[.]"). Nor do any purported disclaimers in the Anchor TOS (*see* Mot. 28; Amani Decl. Ex. A §§ 10, 14) relate to the claims at issue here, and Defendants are not entitled to inferences in their favor at this stage. *Woodard v. Smartmatch Insurance Agency, LLC*, 2024 WL 4252803, at *2–3 (N.D. Ill. Sept. 20, 2024).

While Plaintiffs allege misconduct undertaken by both TFL and Defendants, none of Plaintiffs' claims against Defendants arise out of or relate to the Anchor TOS, the Interface, or the Anchor Protocol. Nor could they. As explained above, TFL expressly disclaimed its control over any transactions in UST, including transactions conducted on the Anchor Protocol, *see* Amani Decl. Ex. A §§ 1, 14, and Plaintiffs purchased UST elsewhere. That Plaintiffs subsequently deposited *some* of their UST tokens on the Anchor Protocol is no more relevant to Plaintiffs' claims than the fact that Plaintiffs' may have held their other UST tokens on other crypto-asset platforms or on personal digital storage devices. It cannot possibly be the case that Defendants may invoke arbitration provisions in the terms of use of any of those storage locations or devices simply because Plaintiffs' claims in this action pertain to UST. Such a connection is far too attenuated to invoke the arbitration clause in the Anchor TOS.

In any event, even if the subsequent deposit of UST onto the Anchor Protocol could somehow subject claims relating to purchases of *those specific* UST tokens to the Anchor TOS (which it does not), there is no reason to conclude, and Defendants do not attempt to argue, that the arbitration provision of the Anchor TOS applies to claims relating to the purchase of other UST tokens that were *never* deposited on the Anchor Protocol. As alleged, approximately one quarter of all UST holdings were held by Class members in crypto-wallets outside the Anchor Protocol. Am. Compl. ¶ 129. In addition, each Plaintiff held some UST off of the Anchor Protocol. *Id.*

Without question, claims based on purchases of such UST are unrelated to the arbitration provision of the Anchor TOS and may not be arbitrated.[24]

## V. The Court Should Not Stay Any Non-Arbitrable Claims

Even if this Court finds that some claims are arbitrable, it should not stay the instant proceedings for the non-arbitrable claims. *See Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) ("[W]hether to stay the entire case [is] discretionary in cases involving both arbitrable and nonarbitrable issues."). "[C]ourts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation." *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004), *cited in Volkswagen*, 474 F.3d at 971. To make this determination, courts consider the risk of inconsistent rulings and the prejudice caused by delay. *Volkswagen*, 474 F.3d at 972. Neither factor warrants a stay of non-arbitrable claims here.

*First*, any danger of inconsistent rulings between this case and a Singapore arbitration is "slight." *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419 (7th Cir. 2014). As Defendants repeatedly acknowledge, the core selling point of the Anchor Protocol was its promise of a "20% fixed return on deposits" of UST. *E.g.*, Mot. 7 n.8. In this action, however, Plaintiffs have not alleged any fraud or other malfeasance in connection with that promise, and they do not seek to recover any expected returns from the Anchor Protocol. *See* Am. Compl. ¶ 131. The heart of Plaintiffs' claims is an entirely separate and distinct issue: Defendants' alleged manipulation of

---

[24] Even in *Patterson*, where the operative complaint made clear that the plaintiff's claims arose in part out of his use of the Anchor Protocol and expectation of returns therefrom, the district court still held that the claims were "not intertwined with" the Anchor TOS and therefore not arbitrable. *Patterson*, 710 F. Supp. 3d at 709–10; *see also, e.g.*, 2d Am. Compl. ¶ 6, *Patterson*, No. 22-cv-03600-TLT (N.D. Cal.), Dkt. 102 (Feb. 23, 2023) ("TFL repeatedly touted the stability of UST as an "algorithmic" stablecoin that is paired to the Terra ecosystem's native token LUNA *and the sustainability of the Anchor Protocol* …."); *id.* ¶ 26 ("[T]he Anchor Protocol was at the primary driver of the Terra ecosystem's collapse.").

the price of UST during the Class Period. *See id.* ¶¶ 128–31, 133; *supra* Part IV. Because any arbitration of claims relating to the Anchor Protocol or Anchor TOS is not likely to concern the issues at the heart of this proceeding, there is little, if any, risk of inconsistent rulings between this action and an arbitration.

*Second*, delays in this case have already prejudiced Plaintiffs in the time since they filed their initial complaint in May 2023, *see* Dkt. 1, and fought against (and defeated) a year-long effort by Defendants to transfer venue, *see* Dkts. 28, 30–31, 47. The passage of time can make memories fade and evidence go stale. *Gonzalez v. Rodriguez*, 2023 WL 8004288, at *3 (N.D. Ill. Nov. 17, 2023) ("Plaintiff … raise[d] a legitimate concern of prejudice created by the prospect that memories of witnesses may fade and the individual defendants may change jobs or move away during an indeterminate stay of this action."). Indeed, during the pendency of this litigation, Defendant Kariya resigned from his position as an officer of Defendant Jump Crypto. Am. Compl. ¶ 118. Further delay would unduly prejudice Plaintiffs.

*Third*, to the extent that any claims are arbitrable, the Anchor TOS mandate that such proceedings may be brought only in the Plaintiffs' individual capacities, not as a class arbitration. Amani Decl. Ex. A § 19. It would be inequitable to the entire putative Class for their recoveries to be further delayed while individual claims are arbitrated to a conclusion. If any of Plaintiffs' non-arbitrable claims are nonetheless stayed, such stay should be limited in duration to minimize the prejudice resulting from a stay. *E.g.*, *Flynn v. FCA US LLC*, 2016 WL 5341199, at *6 (S.D. Ill. Sept. 23, 2016) (ordering a 60-day stay of certain non-arbitrable claims because plaintiffs "have a right to continue to press their non-arbitrable claims to a swift resolution").[25]

---

[25] In the event the Court denies Defendants' motion in any part and Defendants appeal such denial, Plaintiffs respectfully request the opportunity to brief the extent to which, if at all, such appeal would affect the Court's jurisdiction over non-arbitrable claims and issues. *Compare Coinbase,*

## **CONCLUSION**

For the above reasons, this Court should reject Defendants' gambit for further delay and

should deny in its entirety their motion to compel arbitration. In any event, claims relating to UST

not held on the Anchor protocol should not be stayed during the pendency of any arbitration.


Dated:    October 24, 2024                Respectfully submitted,

SELENDY GAY PLLC                    ROBBINS GELLER RUDMAN & DOWD LLP


By: _/s/ *Jordan A. Goldstein*_             By: _/s/ *Brian E. Cochran*_
Jordan A. Goldstein                       Brian E. Cochran
Oscar Shine                                 200 S. Wacker Drive, 31st Floor
Babak Ghafarzade                   Chicago, IL 60606
1290 Avenue of the Americas, 20th Floor   bcochran@rgrdlaw.com
New York, NY 10104
jgoldstein@selendygay.com
oshine@selendygay.com                Chad Johnson
bghafarzade@selendygay.com       Jonathan Zweig
                                           420 Lexington Avenue, Suite 1832
                                           New York, NY 10170
                                           chadj@rgrdlaw.com
                                           jzweig@rgrdlaw.com

                                           Eric I. Niehaus
                                           655 West Broadway, Suite 1900
                                           San Diego, CA 92101-8498

                     *Attorneys for Plaintiffs and the Proposed Class*

---

*Inc. v. Bielski*, 599 U.S. 736, 741 (2023) ("[T]he district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing."), *with id.* at 741 n.2 (noting "the district court may still proceed with matters that are not involved in the appeal").